**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jahmel KELLY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 4, 2013.
Filed Oct. 15, 2013.

John P. Cotter, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Alison J. Guest, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BOWES, OTT, and STRASSBURGER,* JJ.

OPINION BY BOWES, J.:

■ Jahmel Kelly appeals from the aggregate judgment of sentence of eighteen to thirty-seven years incarceration imposed by the trial court following his convictions for attempted murder, aggravated assault, criminal conspiracy, carrying a firearm without a license, and person not to possess a firearm. We affirm in part, but vacate Appellant's concurrent sentence for conspiracy.[1]

The facts supporting Appellant's convictions are as follows. At approximately 9:30 p.m. on June 13, 2008, Appellant and Philip Hummel approached the sixteen-year-old victim and his girlfriend while they were sitting on the steps of the victim's house. Appellant opened fire as the victim pushed his girlfriend inside the home. The victim indicated that he knew Appellant from playing football with Appellant's younger brother and that he spent upwards of four days a week at Appellant's house playing the Madden football video game with Appellant's brother. The victim, who was a running back for his high school football team, suffered multiple bullet wounds that ended his ability to play football. In addition, due to the

shooting, the victim and his family were relocated to another state based on safety concerns.

The victim did not identify Appellant as the shooter at Appellant's preliminary hearing, but at trial steadfastly maintained that Appellant and Hummel were his attackers. Both Appellant and Hummel disappeared prior to their trials. A jury initially convicted Appellant *in absentia* of attempted murder, aggravated assault, a general conspiracy verdict, and carrying an unlicensed firearm. Following its verdict on those charges, it then reached a guilty verdict as to the person not to possess a firearm count. Thereafter, on October 18, 2010, the trial court sentenced Appellant *in absentia* to ten to twenty years for attempted murder, three to seven years consecutive for carrying a firearm without a license, and a consecutive term of five to ten years for person not to possess a firearm. The court also imposed a concurrent ten-to-twenty-year sentence for the conspiracy charge.[2] Appellant did not timely appeal. The public defender's office, however, timely filed a PCRA petition on January 14, 2011. The court appointed counsel, who submitted an amended petition seeking the reinstatement of Appellant's direct appeal rights. The PCRA court granted the petition on November 1, 2011, and Appellant filed his notice of appeal on November 9, 2011. The court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the court au-

---

* Retired Senior Judge assigned to the Superior Court.

1. Since Appellant's conspiracy sentence was concurrent to a lawfully imposed sentence of the same length, a remand for resentencing is unnecessary. *See Commonwealth v. Lomax,* 8 A.3d 1264 (Pa.Super.2010); *Commonwealth v. Miller,* 414 Pa.Super. 56, 606 A.2d 495 (1992).

2. The trial court in its Pa.R.A.P.1925(a) decision purported to *sua sponte* vacate Appellant's conspiracy sentence based on merger under 18 Pa.C.S. § 906. We discuss Appellant's conviction and sentence for conspiracy in the body of this opinion.

thored its Pa.R.A.P. 1925(a) decision. The matter is now ready for our review. Appellant presents two issues for our consideration.

I. Did the trial court err in trying the [A]ppellant *in absentia?*

II. Was the evidence sufficient to convict the [A]ppellant of attempted murder, aggravated assault, conspiracy, and violations of [the] uniform firearms act?

Appellant's brief at 2.[3]

■ As a successful sufficiency of the evidence claim precludes a re-trial and results in discharge as to the crime in question, we address Appellant's sufficiency challenges at the outset. *Commonwealth v. Brown,* 52 A.3d 320, 324 (Pa.Super.2012). In analyzing such claims, "we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Id.* at 323. Critically important, we must draw all reasonable inferences from the evidence in favor of the Commonwealth as the verdict winner. *Commonwealth v. Hopkins,* 67 A.3d 817, 820 (Pa.Super.2013). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Brown, supra* at 323. Of course, "the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id.*

■ The Commonwealth can meet its burden "by wholly circumstantial evidence and any doubt about the defendant's guilt

is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id.* It is improper for this Court "to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.* Additionally, "the entire record must be evaluated and all evidence actually received must be considered." *Id.*

■ Appellant argues that the sole evidence against him was the testimony of the victim, "who initially told the police that he did not know who committed the crimes," and testified at the preliminary hearing that he was unsure whether Appellant shot him. Appellant's brief at 9–10. He summarily argues that "the testimony of the complainant when viewed with all the rest of the evidence introduced is not believable and the verdict of guilt is based on suspicion only[.]" *Id.* at 10. Since Appellant's entire limited argument revolves around a credibility determination, which this Court does not make, his claim necessarily fails.

Having determined that the sufficiency argument Appellant advances is unavailing, we address his trial *in absentia* position. Appellant begins by asserting that he has a state and federal constitutional right to be present at his trial. He continues that Pa.R.Crim.P. 602 requires a defendant to be present at every stage of the trial. At the time of Appellant's trial, that rule provided:

(A) The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. The defendant's absence without cause shall not preclude pro-

---

**3.** In disregard of this Court's order of January 24, 2013, granting the Commonwealth an extension to file its brief until March 19, 2013, the Commonwealth failed to timely file a brief and did not submit a letter brief until May of this year. Accordingly, we decline to consider that brief. *Commonwealth v. Beasley,* 559 Pa. 604, 741 A.2d 1258, 1261 n. 8 (1999).

ceeding with the trial, including the return of the verdict and the imposition of sentence.

Pa.R.Crim.P. 602(A) (effective January 1, 2001 until June 1, 2013).[4]

Appellant maintains that the Commonwealth did not establish that he was absent without cause. Rather, he contends that the evidence introduced at the hearing to determine whether the trial should be held in his absence established that he was unaware of his trial date. Appellant relies on *Commonwealth v. Hill*, 737 A.2d 255 (Pa.Super.1999), and *Commonwealth v. Sullens*, 533 Pa. 99, 619 A.2d 1349 (1992), in support of his position.

In *Hill*, police first arrested the defendant for a drug offense on June 22, 1995. Thereafter, he was released on bail and signed a subpoena directing him to appear for trial on February 19, 1997. Police arrested the defendant a second time for another drug offense, and on January 6, 1997, the court authorized his release on bail subject to house arrest. The defendant on January 17, 1997, signed an additional subpoena ordering him to appear for trial on February 19, 1997. The defendant failed to appear on that date and the court granted two continuances. However, when the defendant failed to appear, two different juries tried and convicted him for the separate drug offenses. The defendant also did not appear for his sentencing and the court sentenced him *in absentia.*

On appeal, this Court upheld his trial and sentencing despite his absence. We found that the defendant "was fully aware of the charges against him and of his original trial date." *Hill, supra* at 259.

The panel noted that the defendant not only signed two subpoenas, but failed to appear after his case was continued and never offered an explanation for his absence. Further, it opined that the Commonwealth could not locate the defendant despite searching local hospitals, custodial facilities, the defendant's last known address, the morgue, and Philadelphia probation.

In *Sullens*, the Pennsylvania Supreme Court reversed a decision of this Court, granting the defendant a new trial after he was tried in his absence. The defendant therein had been in custody when his brother was killed in a car accident. The court allowed him to attend the funeral, but he failed to return to custody. The Commonwealth charged the defendant with escape. After his capture, at his arraignment for the escape charge, he waived his right to a jury trial and was informed of his trial date. The defendant did not appear on the scheduled trial date. The court issued a bench warrant and tried him in his absence. Subsequently, prior to his sentencing, police arrested Appellant. During his sentencing, the defendant admitted he knew the trial date and did not appear because he did not wish to be found guilty.

In finding that the trial court did not err in trying the matter without the presence of the defendant, the *Sullens* Court reasoned that the trial "judge's recollection and defense counsel's statements provided an adequate basis for the court to make a factual finding that appellee had notice of his trial date. The only uncertainty was due to the fact that defense counsel could

---

4. The Pennsylvania Supreme Court amended the rule on May 2, 2013, effective June 1, 2013. The new rule reads in relevant part:
 (A) The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as

otherwise provided by this rule. The defendant's absence without cause at the time scheduled for the start of trial or during trial shall not preclude proceeding with the trial, including the return of the verdict and the imposition of sentence.
Pa.R.Crim.P. 602(A).

not find a copy of his letter to appellee conveying the information." *Sullens, supra* at 1352. It continued that the defendant's own admission at sentencing conclusively established that he had notice of his trial date.

Appellant submits that he was not provided court notice of a pre-trial conference or a subpoena for trial. He notes that he appeared at the preliminary hearing and argues that, because the victim did not identify him, he "had reason to believe that the charges against him were dismissed[,]" Appellant's brief at 7–8, despite the court stating on the record in his presence that it found sufficient evidence to hold him for court. *See* N.T., 9/4/08, at 39. According to Appellant, as the Commonwealth did not send or serve notice on him, it failed to prove by a preponderance of the evidence that he knew the trial date. Since he did not know the date of his trial, he alleges that he was improperly tried *in absentia*.

 Pursuant to Article I, § 9 of the Pennsylvania Constitution, and the Sixth Amendment of the federal constitution as applied to the states via the Fourteenth Amendment due process clause, defendants have the right to be present during their criminal trial.[5] *Commonwealth v. Wilson*, 551 Pa. 593, 712 A.2d

735 (1998); *Hill, supra; Commonwealth v. Bond*, 693 A.2d 220 (Pa.Super.1997); *see also* PA Const. Article I, § 6 ("Trial by jury shall be as heretofore and the right thereof remain inviolate."). This right, however, is not absolute. *Wilson, supra; Sullens, supra; Hill, supra; Bond, supra*. "In non-capital cases, a defendant may, by his actions, waive this right expressly or implicitly." *Wilson, supra* at 737; *see also Sullens, supra; Hill, supra; Commonwealth v. Johnson*, 734 A.2d 864 (Pa.Super.1999); *Commonwealth v. King*, 695 A.2d 412 (Pa.Super.1997); *Bond, supra*. As far back as 1784, the Pennsylvania Supreme Court indicated that absenting oneself from facing trial did not violate a person's jury trial rights. *Respublica v. Doan*, 1 Dall. 86, 1 L.Ed. 47 (Pa.1784).

In the *Doan* case, Aaron Doan was judicially attainted of robbery by process of outlawry. *Id.* Outlawry involved the presentation of a bill of indictment followed by a writ of *capias*. *See id.,* at 87. At English common law, if the person indicted did not surrender or could not be found, the court would issue a writ of *exigent*. A sheriff would then demand that the person surrender for five consecutive court terms. *Id.* If the defendant remained a fugitive, a

---

5. Article I, § 9 reads:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

PA. Const. Art. 1, § 9. Similarly, the Sixth Amendment provides,

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. Amend. VI.

pronouncement of outlawry ensued. *Id.* This judicial attainder resulted in the defendant's loss of civil rights and was considered a conviction of the indicted offense. *Id.* at 90 ("Outlawry, in a capital case, is as a conviction for the crime").

Doan had been indicted for robbery in Bucks County, Pennsylvania, but fled to New York. After his capture, his counsel raised various exceptions to the outlawry process, which the court denied, and sentenced him to be executed. John Dickinson, the famed revolutionary leader and then-President of this Commonwealth's Supreme Executive Counsel,[6] declined to issue a warrant of execution and wrote to the High Court asking it to reassess the case and reverse the death sentence to allow for a trial. Among the express issues Dickinson raised was whether "such a mode of attainder [was] compatible with the letter and spirit of the Constitution of this State, which establishes, with such strong sanctions, the right of trial by jury? See section the ninth of the Declaration of rights section the twenty-fifth of the Frame of government." *Id.* at 87.[7]

Chief Justice Thomas McKean, another important revolutionary figure, along with Justices George Bryan and Jacob Rush, responded:

> We conceive, such a mode of attainder compatible with the letter and spirit of the Constitution of this State, and that it is no infringement of the right of trial by jury; for, that the party had not that trial, was owing to himself; he was not deprived of the right. As well, indeed, might an offender, who confessed the fact in court, by pleading guilty to the indictment, after sentence, complain that he had not a trial by jury. By refusing to take his trial, he tacitly seems to have admitted himself guilty.

*Id.* at 90–91. Hence, it is long-established that where a person absents himself from trial, his jury trial right is not infringed.

In *Bond, supra,* this Court provided that a defendant has the burden of establishing good cause as to why he was not present at a critical stage of the proceedings. *Bond, supra* at 224 n. 5. The *Bond* Court relied on *Commonwealth v. Doleno,* 406 Pa.Super. 286, 594 A.2d 341 (1991), which in turn quoted from *Commonwealth v. Andrews,* 245 Pa.Super. 547, 369 A.2d 762, 764 (1977), stating, "If the defendant has good cause for not being present at every stage of the trial he must establish this to the satisfaction of the trial court." *Doleno, supra* at 343.

However, in *Hill, supra,* this Court indicated that the Commonwealth bears the burden of showing "by a preponderance of the evidence that the defendant is absent 'without cause' and that he knowingly and intelligently waived his right to be present[.]" *Hill, supra* at 259; *see also Commonwealth v. Tizer,* 454 Pa.Super. 1, 684 A.2d 597, 604 (1996). In finding that the

---

6. The office of governor had yet to be established. *Compare* PA Const. of 1776 with PA Const. of 1790.

7. Article IX of the Pennsylvania Constitution of 1776 provided:

> That in all prosecutions for criminal offences, a man hath a right to be heard by himself and his council, to demand the cause and nature of his accusation, to be confronted with the witnesses, to call for evidence in his favour, and a speedy public trial, by an impartial jury-of the country, without the unanimous consent of which jury he cannot be found guilty; nor can he be compelled to give evidence against himself; nor can any man be justly deprived of his liberty except by the laws of the land, or the judgment of his peers.

Additionally, Section 25 of the Frame of Government of the 1776 Constitution set forth:

> Trials shall be by jury as heretofore: And it is recommended to the legislature of this state, to provide by law against every corruption or partiality in the choice, return, or appointment of juries.

Commonwealth bore the burden of proof, the *Hill* Court cited to the predecessor to Pa.R.Crim.P. 602(A), Pa.R.Crim.P. 1117, and a case that held that a defendant's knowing, voluntary, and intelligent waiver of his *Miranda* rights must be established by the Commonwealth based on the preponderance standard. *Id.*, citing *Commonwealth v. Scarborough*, 491 Pa. 300, 421 A.2d 147 (1980). Of course, *Bond, Doleno,* and *Andrews* interpreted the predecessor of Pa.R.Crim.P. 602(A) as placing the burden on the defendant. The comment to Rule 602, nonetheless, also indicated, and still provides, that the burden rests on the Commonwealth. Comment to Pa. R.Crim.P. 602.

In light of these patently inconsistent pronouncements, the safest course of action is to view the proceedings as requiring the Commonwealth to have proven by a preponderance of the evidence that Appellant was absent without cause. In determining whether cause exists, the *Hill* Court explained, "when a defendant is unaware of the charges against him, unaware of the establishment of his trial date or is absent involuntarily, he is not absent 'without cause' and therefore cannot be tried *in absentia*." *Hill, supra* at 259.

■■■ The record establishes that trial was originally scheduled in this matter for April 1, 2009. However, the court rescheduled the trial on that date for June 30, 2009. On June 30, 2009, the court moved the trial date to September 21, 2009, and granted Appellant release on nominal bail pursuant to Rule 600. The defendant, though in custody, however, was not present in the courtroom for these proceedings. Thereafter, on September 21, 2009, Appellant failed to appear and his attorney requested permission to serve Appellant. Appellant had not been served notice of the September date. Appellant's attorney signed a subpoena on behalf of Appellant for the new trial date of October

2, 2009. Again, Appellant did not appear and the court issued a bench warrant. The court continued the case until October 8, 2009, so that Appellant and his co-defendant Philip Hummel could be tried together. The court again rescheduled the trial date on October 8, 2009, to May 3, 2010, keeping the bench warrant in place. The defendant did not appear for the May 3, 2010 date. The court continued the case until May 24, 2010, for both a hearing on whether Appellant should be tried *in absentia* and a possible trial.

At the hearing, the Commonwealth presented evidence that it conducted a hospital search of Abington Hospital, Einstein Hospital, Chestnut Hill Hospital, Episcopal Hospital, Aria Frankford, Aria Torresdale, Aria Bucks County, Holy Redeemer Hospital, Jeanes Hospital, Jefferson Hospital, Lankenau Hospital, Nazareth Hospital, Cooper Hospital, Pennsylvania Hospital, St. Joseph's Hospital, Temple Hospital, and University of Pennsylvania Hospital. The search encompassed hospitals in Philadelphia, Bucks, and Montgomery County. In addition, the Commonwealth proffered evidence that it conducted a state, local, and federal custody check and contacted the Philadelphia medical examiner's office. Finally, the Commonwealth introduced into evidence a copy of the subpoena for the October 2, 2009 trial date signed by defense counsel from the public defender's office. Appellant's counsel, a different public defender, also moved into evidence a letter sent to Appellant regarding his trial that was returned to the public defender's office as undeliverable.

The trial court, at the conclusion of the hearing, set forth that Appellant had not been heard from since July 2, 2009, including by his attorney. It noted the Commonwealth's search of the hospitals, the medical examiner, and a custody search. The court averred that it permitted de-

fense counsel to attempt to locate Appellant on September 21, 2009, and that Appellant continually failed to appear. Based on these facts, it granted the Commonwealth's request to proceed to trial without the presence of Appellant.

We begin by noting that our Supreme Court has opined that,

A defendant who is released on bail before trial gives the court his or her assurance that he or she will stand trial and submit to sentencing if found guilty. Unless the defendant is prevented from attending the proceedings for reasons beyond his or her control, then the defendant is expected to be present at all stages of the trial. A defendant owes the court an affirmative duty to advise it if he or she will be absent. If a defendant has a valid reason for failing to appear, for example, if he or she has a medical emergency or is called to leave because of a family emergency, then the defendant can alert the court personally or through counsel of the problem.

*Wilson, supra* at 738 (internal citation omitted).

Instantly, it is apparent from the record that Appellant did not contact either the court or his counsel after he was released on bail. Indeed, Appellant was captured in Georgia on October 21, 2010, well after his trial and three days after his sentencing. Appellant's own counsel signed a subpoena assuring Appellant's presence for the trial scheduled on October 2, 2009, but Appellant did not appear. A letter sent by Appellant's defense counsel to the address of Appellant was returned as undeliverable.

The Commonwealth sought to ascertain whether Appellant was hospitalized in three separate counties or whether he was incarcerated or deceased. Admittedly, the Commonwealth did not travel to Appellant's Philadelphia address. Nevertheless, it was a logical inference from the evidence that Appellant willfully absented himself since his own attorneys could not contact him so as to provide him with the subpoena for his October 2, 2009 trial date. By voluntarily refusing to remain in contact with counsel, a presumption arises that Appellant knowingly sought to avoid being tried in this case. *See King, supra* at 414 ("despite being aware that a trial was pending, [the defendant] never attempted to contact either the court or his counsel to determine the status of his case. Thus, the trial court had sufficient evidence with which to conclude that appellant was willfully evading trial[.]"). Accordingly, we find that the trial court did not commit error in trying Appellant *in absentia*.

Having addressed the issues raised by Appellant, we are compelled to discuss the trial court's purported vacating of Appellant's conspiracy sentence in its 1925(a) opinion, pursuant to 18 Pa.C.S. § 906. Under § 906, a judge cannot sentence a defendant for multiple inchoate crimes that are designed to culminate in the commission of the same crime. *See* 18 Pa.C.S. § 906; *Commonwealth v. Jacobs*, 614 Pa. 664, 39 A.3d 977 (2012). The court, however, lacked jurisdiction when writing its 1925(a) decision to correct the sentence absent a patent clerical error on the face of the record. *Commonwealth v. Holmes*, 593 Pa. 601, 933 A.2d 57 (2007); *see also Jacobs, supra* at 981–982.

 Here, no patent clerical error exists on the face of the record. According to the record, Appellant was sentenced for conspiracy to commit aggravated assault and attempted murder, not conspiracy to commit murder and attempted murder. Attempted murder and conspiracy to commit aggravated assault are not designed to culminate in the commission of the same crime, *i.e.*, murder. *See Jacobs, supra* at

983 ("a person may be convicted and sentenced for two inchoate crimes that arise out of the same incident which were not designed to culminate in the commission of the same crime"). Further, attempted murder and conspiracy to commit aggravated assault both include additional separate elements and therefore do not merge. *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 24 (1994) (discussing whether "both crimes require proof of at least one element which the other does not, in which case the sentences do not merge."). Specifically, attempted murder requires a specific intent to kill, which conspiracy to commit aggravated assault does not, and the conspiracy crime requires an agreement that is not included in attempted murder.

■ Since aggravated assault and murder are not the same crime, 18 Pa.C.S. § 906 does not automatically apply to the conspiracy to commit aggravated assault and attempted murder convictions. Nonetheless, we are cognizant that the criminal information in this case set forth the conspiracy charge as conspiracy to commit murder/assault based on Appellant's shoot-ing at the victim. Criminal Information, at count 2. The court instructed the jury that the conspiracy count was conspiracy to commit attempted murder and/or conspiracy to commit aggravated assault. N.T., 5/27/08, at 157; *see also id.* at 163. The court plainly misspoke when it stated that Appellant could be guilty of conspiracy to commit attempted murder, since the crime is actually conspiracy to commit murder.

Appellant did not challenge his concurrent sentence for conspiracy on the ground that it was charged broadly and the jury could have based its conspiracy finding on a conspiracy to commit murder, rendering multiple sentences for two inchoate crimes that culminated in the commission of the same crime, *i.e.*, attempted murder and conspiracy to commit murder, improper. *See* 18 Pa.C.S. § 906; *Jacobs, supra.* However, to the extent the issue implicates merger, it pertains to the legality of one's sentence and may be addressed *sua sponte.*[8] *See Commonwealth v. Springer*, 961 A.2d 1262 (Pa.Super.2008). We add that in light of the trial court's pronouncement that it was vacating his conspiracy

8. Numerous cases in the 1970's concluded both that merger and double jeopardy claims were waivable. *See Commonwealth v. Kull*, 267 Pa.Super. 55, 405 A.2d 1300 (1979); *Commonwealth v. McCabe*, 242 Pa.Super. 413, 364 A.2d 338 (1976); *Commonwealth v. Gadson*, 234 Pa.Super. 648, 341 A.2d 189 (1975); *Commonwealth v. Tisdale*, 233 Pa.Super. 77, 334 A.2d 722 (1975); *Commonwealth v. Rispo*, 222 Pa.Super. 309, 294 A.2d 792 (1972); *see also Commonwealth v. Henderson*, 433 Pa. 585, 253 A.2d 109 (1969), *overruled on other grounds by Commonwealth v. Cannon*, 442 Pa. 339, 275 A.2d 293 (1971). However, in a plurality *en banc* decision, this Court collected multiple conflicting cases and, relying on *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976), *overruled on other grounds by Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984), and *Common-*

*wealth v. Norris*, 498 Pa. 308, 446 A.2d 246 (1982), determined that a merger double jeopardy claim cannot be waived and is a legality of sentence issue. *Commonwealth v. Campbell*, 351 Pa.Super. 56, 505 A.2d 262 (1986) (*en banc*). Although the decision was a plurality, only three judges did not agree with the position that merger could never be subject to waiver. *Id.* at 269–271 (Wieand, J. concurring and joined by Cavanaugh, J. and McEwen, J.) (providing a more nuanced view of waiver and merger). Subsequent decisions have consistently stated that merger issues relate to the legality of a sentence. *Commonwealth v. Baldwin*, 604 Pa. 34, 985 A.2d 830 (2009); *Commonwealth v. Wade*, 33 A.3d 108 (Pa.Super.2011); *Commonwealth v. Lomax*, 8 A.3d 1264 (Pa.Super.2010); *Commonwealth v. Robinson*, 931 A.2d 15 (Pa.Super.2007) (*en banc*).

sentence, Appellant had little reason to address the issue in his brief to this Court.

In *Commonwealth v. Riley*, 811 A.2d 610 (Pa.Super.2002), this Court held that where the jury renders a general verdict and there is an absence of clear evidence of the jury's intent, a defendant can only be sentenced for conspiracy to commit the less serious underlying offense. In this case, that would mean the court could only have sentenced the defendant for conspiracy to commit aggravated assault. The sentencing papers reflect that the concurrent sentence was imposed for that crime. However, the *Riley* Court also concluded that the defendant must be given the benefit of the jury's ambiguous verdict. Instantly, the benefit would derive from concluding that the conspiracy verdict was for conspiracy to commit murder and not conspiracy to commit aggravated assault, since the former charge would automatically merge with attempted murder. Phrased differently, construing the verdict as conspiracy to commit aggravated assault could have allowed the court to sentence Appellant consecutively for that crime and attempted murder, *see Jacobs, supra,* though it elected not to follow that path.

While the concurrent nature of the sentences herein renders any *vacatur* academic, our Supreme Court in *Jacobs, supra,* nevertheless addressed whether it was proper to sentence a defendant concurrently for attempted escape and conspiracy to commit escape based on an alleged ambiguous verdict. Ultimately, the *Jacobs* Court concluded that the sentences were lawful because the jury verdict was

not ambiguous and the two inchoate crimes were not designed to culminate in the same escape crime. In contrast, the evidence in this case is not clear as to the jury's intent.[9] Therefore, we agree with the trial court that under the precise facts herein the sentence for conspiracy and attempted murder should have merged, albeit on different grounds. Accordingly, we vacate Appellant's conspiracy sentence.

Judgment of sentence affirmed in part and vacated in part.

Judge STRASSBURGER files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY STRASSBURGER, J.:

I join the Majority insofar as it holds: 1) the trial court did not err in trying Appellant *in abstentia,* and 2) the evidence was sufficient to convict Appellant of attempted murder, aggravated assault, and violations of the Uniform Firearms Act.

I dissent from the Majority's addressing the issue of the trial court's vacating Appellant's conspiracy sentence when neither party raised this issue.

---

9. In this respect, we note that Appellant was jointly tried with his co-defendant, Philip Hummel, who also was tried *in absentia.* The court at the opening of the case set forth the charges against Hummel as including "criminal conspiracy engaged in murder." N.T., 5/25/10, at 4.