J-A09014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MOHAMMED KAMANA, | : | |
| | : | |
| Appellant | : | No. 3446 EDA 2017 |

Appeal from the Judgment of Sentence, June 9, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0006317-2015.

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JUNE 07, 2019**

Appellant Mohammed Kamana[1] appeals from the judgment of sentence imposed after a jury convicted him of attempted murder, aggravated assault, criminal conspiracy, possession of an instrument of a crime, and various firearm charges.[2]  After careful review, we affirm the convictions, but remand for resentencing.

The relevant facts are as follows:  On April 13, 2015, Appellant shot Michael Pritchette in the back after the two had been involved in a dispute several days prior.  Near the intersection of 67th and Elwood Street, Appellant

_____

[1] According to the Commonwealth, Appellant's surname is actually "Kamara." **See** Commonwealth's Brief at 2, n.1.  For ease of discussion, we will refer to him as "Appellant."

[2] 18 Pa.C.S.A. §§ 901 and 2502, 2702, 903, 907, 6105, 6106, and 6108.

_____

*   Retired Senior Judge assigned to the Superior Court.

and his co-defendant, Mustafa Crenshaw, pulled up to Pritchette in a white Buick, exited the car and began fighting him. Crenshaw passed a gun to Appellant, who then shot Pritchette.

Anita Bivens, a SEPTA bus operator, witnessed the shooting while driving her bus through the 67th and Elwood Street intersection. Upon hearing a gunshot, Bivens immediately turned the bus onto 67th Street, driving until she spotted a police car several blocks away.

Pritchette was initially interviewed by police in the hospital, but claimed he did not know who shot him. One week later, police interviewed Pritchette again. Pritchette told the police that the men who attacked him were called "Staph" and "Ham" whom he identified in photographs. Pritchette explained he had not disclosed this information previously because he was worried for his safety since the two men knew where he lived.

Police obtained an arrest warrant for Appellant and learned he was staying at 2105 South 65th Street. On April 24, 2015, Sergeant Michael Davis knocked on the door of the residence. Appellant looked out of a first floor window and then ran upstairs. Sergeant Davis continued to knock and yell for Appellant while other officers secured the property. Appellant returned and opened the front door five minutes later where he was apprehended.

A grand jury was empaneled to consider potential charges. After hearing testimony from various witnesses, including Pritchette, the grand jury returned an indictment that was approved by the supervising judge. The Commonwealth also filed bills of information against Appellant, charging him

- 2 -

with the above crimes. The case then proceeded to a jury trial. During trial, the court issued two exclusion orders, barring the public from the proceedings during Pritchette's and Bivens' testimony. The jury convicted Appellant on all charges. On June 9, 2017, the trial court sentenced Appellant to an aggregate sentence of 11½ to 23 years' incarceration, plus 10 years of probation. Appellant filed post-sentence motions, which were denied by operation of law on October 18, 2017. This timely appeal follows. Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our appellate review:

> 1. Did the trial court abuse its discretion when it issued an exclusion order to clear the courtroom during the testimony of Pritchette and Bivens in violation of Appellant's right to a fair and public trial under Article I, Sections 9 and 11 of the Pennsylvania Constitution and the 6th and 14th Amendments to the United States Constitution?
>
> 2. Did the trial court abuse its discretion when it allowed the Commonwealth to present identification testimony that Appellant sometimes spoke with an African or Jamaican accent when the Commonwealth failed to disclose this identification evidence to Appellant prior to trial in violation of Pa.R.Crim.P. 573(b)(1)(d)?
>
> 3. Did the trial court err in issuing a consciousness of guilt/flight instruction over Appellant's objection when the evidence did not support the issuance of such an instruction?
>
> 4. Did the trial court improperly conclude that that jury found Appellant guilty of conspiracy to commit aggravated assault as opposed to conspiracy to commit murder where: (1) the jury rendered a general verdict on the charge of conspiracy; (2) a defendant must receive the benefit of an ambiguous verdict; (3) Appellant received a sentence of 2½ to 5 years of imprisonment for the conspiracy conviction; and (4) Appellant could not have been sentenced for

- 3 -

conspiracy to commit murder when he had already received a sentence for the crime of attempted murder?

**_See_** Appellant's Brief at 5-6.

In his first issue, Appellant asserts that the trial court violated his right to a public trial guaranteed by Article I, Section 9 of the Pennsylvania Constitution and the Sixth and Fourteenth Amendments of the United States Constitution.[3]  Although the right to a public trial is indeed enshrined in both this Commonwealth's and the United States' constitutions, it is not absolute. **_Commonwealth v. Knight_**, 364 A.2d 902, 906 (Pa. 1976).  A court may issue an exclusion order if it determines such action is necessary under the circumstances.  "[T]he exclusion order must be fashioned to effectuate protection of the important interest without unduly infringing on the accused's right to a public trial either through its scope or duration." **_Id._**  The decision to issue an exclusion order is within the sound discretion of the trial court as "it alone is sufficiently close to the circumstances to apprehend fully the subtleties that may be present." **_Id_**.  Therefore, our review is limited in determining whether the trial court abused its discretion in issuing the order, and if it did not, whether it abused its discretion in fashioning the scope and duration of the order.  **_Commonwealth v. Conde_**, 822 A.2d 45, 49 (Pa. Super. 2003).

_____

[3] The Commonwealth argues that Appellant waived this challenge because, although he objected at trial, he did not base the objection on constitutional grounds.  **_See_** Commonwealth's Brief at 8-9.  After reviewing the pertinent transcript, we conclude that Appellant sufficiently preserved this claim.  **_See_** N.T., 3/23/17, 118-119.

In granting the Commonwealth's motion to clear the courtroom, the trial court reasoned at trial:

> It is my job to make sure that the courtroom remains in order. And that everyone conducts themselves with proper decorum and to make sure, to the extent that I can – we have two sheriffs here also – that the courtroom is safe.
>
> The Commonwealth has put sufficient basis on the record for their belief that their next witness, who is the alleged victim in the case, is one who has repeatedly indicated that they were concerned for their personal safety in coming forward and even giving any testimony of any other kinds of statements in this case.
>
> And in addition, to the extent that this case was one that was handled by the indicted [sic] grand jury, which in and of itself, indicates that there was some sort of intimidation or alleged intimidation or suggestion of intimidation taking place, even at the time the case was brought to the court the very first time.
>
> Under those circumstances, I don't have to wait for someone in the room to say something in order to make sure that proper decorum is exercised or that the room is safe for everyone involved, including the alleged victim in this case.
>
> So I agree with the Commonwealth at this point, it is appropriate to clear the courtroom so that the alleged victim in this case can give testimony without fear of any further retaliation.
>
> The Commonwealth had indicated in opening argument that the alleged victim was concerned about his personal safety; moved out of state. He was not in state on Tuesday when they were supposed to be here, but now is back in state and still has the same concern for [his] personal safety that [he] had at the beginning of the case.

N.T., 3/23/17, at 120-121. [4]

In support of his claim that that the trial court abused its discretion in clearing the courtroom, Appellant specifically argues that:

> [T]here was no evidence presented to suggest that either [Pritchette] or [Bivens] had any reason to fear intimidation or retaliation by either of the defendants or their families. In fact, the trial court did not require either witness to testify at an *in camera* hearing, but instead accepted the prosecutor's assertion that each witness was afraid to publicly testify. This was simply an inadequate basis for abridging [Appellant's] right to a public trial.

Appellant's Brief at 19. Although the record shows that the trial court did not hold an *in camera* hearing, we disagree with Appellant's assertion that the record did not show sufficient evidence to establish a need for the exclusionary orders.

The trial court rejected Appellant's claim:

> In the case at bar, this Court properly granted the Commonwealth's request to have the courtroom cleared during the testimony of [Pritchette] and [Bivens]. The record shows that the Commonwealth asked for the courtroom to be cleared during [Pritchette's] testimony due to some inappropriate behavior in the courtroom as well as [Pritchette's] fear of retaliation. The Commonwealth argued that this case had been through the grand jury process for this very reason, and that [Pritchette] had moved out of state out of concerns for his safety. Over defense counsel's objection, this Court granted the motion, stating that [the court] wanted to maintain proper decorum in the courtroom, acknowledged that this case had been before a grand jury due to intimidation issues, and expressed concern that the courtroom remain a safe space for everyone. This Court

---

[4] The trial court adopted this same reasoning when ruling on the Commonwealth's motion to exclude during Bivens' testimony.

further stated that each defendant could choose one family member to remain in the courtroom with them for support, while the remainder of the gallery would be cleared for the duration of [Pritchette's] testimony. Later, the Commonwealth requested that the gallery be cleared again during [Bivens'] testimony arguing that Bivens was fearful of retaliation. Once again, over defense counsel objections, this Court grated the motion and agreed to clear the courtroom for the duration of Bivens' testimony, finding that [Bivens'] fears were reasonable as she still resided in Philadelphia and continued to work as a SEPTA bus driver in the city. Thus, the record demonstrates that this Court properly granted the Commonwealth's motions to clear the courtroom as this was a reasonable restriction on access designed to maintain courtroom decorum and ensure the safety of the testifying witnesses. The exclusion was limited in scope and duration, and was restricted just to the testimony of two witnesses, [Pritchette and Bivens]. The general public was permitted to observe every other part of the trial. Moreover, this Court allowed each defendant to choose a support person to remain in the courtroom with them during [Pritchette's] and Bivens' testimonies. Therefore, this Court committed no error when it granted the Commonwealth's requests to clear the courtroom and no relief is due.

Trial Court Opinion 6/26/18, at 12-13.[5] Our review of the record supports the trial court's conclusion.

Initially, this matter was presented to an indicting grand jury rather than proceeding to a preliminary hearing. In order for a judge to grant the Commonwealth's motion for an indicting grand jury, the Commonwealth must "allege facts asserting that witness intimidation has occurred, is occurring, or

_____

[5] Appellant and Crenshaw were tried together. Crenshaw was convicted of aggravated assault, criminal conspiracy, possession of an instrument of a crime and various firearm violations. His appeal is docketed at No. 3590 EDA 2017.

is likely to occur." Pa.R.Crim.P. 556.2(A)(1). The judge will grant the Commonwealth's motion only if he determines probable cause of witness intimidation exists. Pa.R.Crim.P. 556.2(A)(3). Hence, the judge who presided over Appellant's grand jury hearing found that the Commonwealth presented sufficient facts that witness intimidation had occurred or likely would.

Furthermore, both Pritchette and Bivens failed to appear until a bench warrant was issued for their arrest. Pritchette explained he was reluctant to testify in front of "a lot of people" because he was "afraid [of] what's going to happen." N.T., 3/23/17, at 130. Pritchette also had moved out of state for fear of his safety. Bivens, like Pritchette, also testified that she was hesitant to testify for fear that someone in the neighborhood would see her face and would cause her problems. N.T., 3/24/17, at 141. Bivens additionally testified that she had been so "shaken" by the incident that she had taken a six-week leave from work and undergone therapy for anxiety. *Id*. at 145-46, 150.

In furtherance of his argument, Appellant relies on this Court's decision in **Commonwealth v. Penn**, 562 A.2d 833 (Pa. Super. 1989). In that case, this Court reversed the defendant's conviction for murder and remanded for a new trial after finding the trial court had abused its discretion by failing to examine a witness who alleged intimidation prior to closing the courtroom. This Court further held that the trial court erred in failing to consider alternatives to closure and explain on record why alternatives were impractical or inadequate to serve the interests that closure was designed to protect. **Id**. at 839.

However, there is a significant procedural distinction between **Penn** and the case at bar. Here, unlike in **Penn**, the matter was initially presented to an indicting grand jury rather than proceeding to a preliminary hearing. Furthermore, both Pritchette and Bivens verified the Commonwealth's assertions once they took the stand, and testified they were afraid for their safety. In **Commonwealth v. Knight**, 364 A.2d 902, 907 (Pa. 1976), our Supreme Court noted that the witness's actual testimony validated the representations made by the prosecuting attorney, further supporting the Court's decision that the trial judge had properly excluded the public. This is in direct opposition to **Penn**, where there the witness never testified on the record about his alleged fears or intimidation.

Additionally, while the trial court opted to temporarily clear the courtroom for Pritchette's and Bivens' testimony, it permitted Appellant to choose a family member to remain present, to observe the proceedings and to offer support. N.T., 3/23/17, at 121; 3/24/17, at 109-110. In this way, the trial court limited the exclusion in both scope and duration to balance the interests of the prosecution and the defense.

"We should not be hasty to reverse a trial judge's actions in establishing order in his courtroom, unless his actions are not designed to maintain dignity, order, and decorum, and instead deny or abridge unwarrantedly the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places." **Commonwealth v. Berrigan**, 501 A.2d 226, 234 (Pa. 1985). Accordingly,

under such circumstances, the trial court did not abuse its discretion in determining necessity warranted the issuance of the exclusion order which it thoughtfully limited in scope and duration.

In his second issue, Appellant argues that the trial court erred in allowing the presentation of voice identification testimony when the Commonwealth failed to disclose such evidence to defense counsel prior to trial.

After the prosecution learned that Sergeant Michael Davis knew Appellant had an African accent from previous conversations he had with him, the prosecution informed the trial court and defense counsel he wished to question him on that subject. Defense counsel objected, arguing that:

> since [defense] counsel was not aware that [Appellant] sometimes spoke with an accent, and since the defense had already given an opening statement in which it claimed that [Appellant] was not the shooter, he argued that [Appellant] would be unfairly prejudiced if Sergeant Davis was permitted to make what is tantamount to voice identification of [Appellant] at trial.

Appellant's Brief at 25. The trial court overruled the objection.

In arguing that such testimony should not have been admitted, Appellant contends that the Commonwealth violated Pa.R.Crim.P. 573(B)(1)(d) by failing to disclose such identification testimony prior to trial. Rule 573, which relates to pretrial discovery and inspection, provides in relevant part:

**(B) Disclosure by the Commonwealth.**

- 10 -

(1) *Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\*\*\*

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification.

Pa.R.Crim.P. 573.

The trial court concluded that it properly allowed the Commonwealth's testimony indicating that Appellant sometimes spoke with an African accent. According to the trial court, even in light of the alleged discovery violation, Appellant's "claim is without merit as this Court afforded [him] the proper remedy of more time to prepare; therefore [Appellant] suffered no prejudice." Trial Court Opinion, 6/26/18, at 14. As the trial court further explained:

> In the case at bar, [Appellant] suffered no prejudice as a result of the Commonwealth's late disclosure of the identification evidence regarding [Appellant's] various accents. The record shows that at trial, the Commonwealth indicated that [it] had reviewed prison tapes and that in them [Appellant] sometimes spoke with an African accent and at other times did not The Commonwealth further stated that Sergeant Davis, who knew [Appellant] from around the neighborhood, would testify that he knew [Appellant] to sometimes speak with an African accent. In addition, [Bivens] would testify that she heard the shooter speak with a Jamaican or African accent. Defense counsel objected, stating that he had no prior knowledge of [Appellant's] use of an African accent and that he had not been given the prison tapes during pretrial discovery. This Court stated that the remedy to late discovery would be

more time to prepare, not preclusion, and that defense counsel could have additional time to prepare and review the prison tapes. Defense counsel was given the weekend to listen to the prison tapes and prepare for Sergeant Davis' testimony. On Monday, defense counsel stated that he listened to the tapes and he was prepared to move forward with the trial.

It is unclear what prejudice [Appellant] could have suffered as a result of this late disclosure. As stated above, this Court has broad discretion in choosing the appropriate remedy to a discovery violation and giving defense counsel additional time to prepare was not an abuse of that discretion. Defense counsel was able to review the prison audio tapes over the weekend and make any necessary changes to his trial strategy as a result. When defense counsel returned to court on Monday, he informed the court that he had listened to the tapes and was prepared to proceed with trial. The prison tapes themselves were never introduced at trial or played for the jury; rather, the only identification testimony regarding [Appellant's] accents came from Sergeant Davis' personal knowledge of [Appellant] from their interactions in the neighborhood and Bivens' testimony that she heard the shooter (who she was unable to identify) speak with and African or Jamaican accent. This evidence was relevant and the jury was free to give it as much or as little weight as they chose. [Appellant] was not unduly prejudiced by the Commonwealth's late disclosure of this identification evidence as his counsel was afforded the proper remedy and granted more time, therefore, no relief is due.

Trial Court Opinion, 6/26/18, at 15-16 (citation omitted). We agree.

Initially, we note that the Commonwealth did not violate Rule 573. The

official comment of this rule clarifies its definition of "identification" explaining:

Whenever the rule makes reference to the term "identification," or "in-person identification," it is understood that such terms are intended to refer to all forms of identifying a defendant *by means of the defendant's person being in some way exhibited to a witness for the purpose of*

- 12 -

> *an identification*: *e.g.*, a line-up, stand-up, show-up, one-on-one confrontation, one-way mirror, *etc*.

Pa.R.Crim.P. 573 (Comment) (emphasis added). The record reveals that Sergeant Davis' observation of Appellant's accent was not "for the purpose of identification" nor was Appellant "exhibited" to him for this purpose. Rather, as noted by the trial court, Sergeant Davis' observation occurred from previous interaction with Appellant over the years. N.T., 3/24/17, at 111. Accordingly, contrary to Appellant's contention, we conclude that Sergeant Davis' testimony describing Appellant's accent was not subject to mandatory disclosure under Pa.R.Crim.P. 573(B)(1)(d).

Moreover, even if the Commonwealth had committed a discovery violation, the trial court did not abuse its discretion in permitting Sergeant Davis' testimony. Trial courts have broad discretion in deciding on the appropriate remedy for a discovery violation. *Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003). "If a discovery violation occurs, the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances." *Id;* Pa.R.Crim.P. 573. Here, as noted by the court, defense counsel was prepared to move forward with the case once he was granted additional time to review the prison tapes. Accordingly, Appellant is entitled to no relief on this claim.

In his third claim, Appellant argues that the trial court erred in issuing a consciousness of guilt/flight instruction. Appellant asserts "there was no

evidence that [he] knew that he was wanted for a crime or attempted to flee." Appellant's at 31-32.[6]

Our standard of review for the trial court's instructions to a jury is well established. "When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete." *Commonwealth v. Hanford*, 937 A.2d 1094, 1097 (Pa. Super. 2007). We may only reverse where the court abused its discretion or committed an error of law. *Id*.

A flight instruction is proper where a person with a reason to know that he was wanted in connection with a crime flees from law enforcement. *Commonwealth v. Thoeun Tha*, 64 A.3d 704, 714 (Pa. Super. 2013). As direct knowledge of a defendant's state of mind is rarely available, the relevant intent may be inferred from circumstantial evidence. *Commonwealth v. Rios*, 684 A.2d 1025, 1035 (Pa. 1996).

The trial court explained the circumstances surrounding Appellant's arrest, and its reasons for granting the Commonwealth's request for flight instruction as follows:

_____

[6] The Commonwealth argues that Appellant waived this claim because, even though defense counsel had argued against the prosecution's request for the instruction, he did not object to the jury charge as delivered by the trial court, although he had the opportunity to do so. *See* Commonwealth's Brief at 12-13 (citing Pa.R.Cim.P. 647(B)). Our review of the record supports this conclusion. *See generally*, *Commonwealth v. Parker*, 104 A.3d 17 (Pa. Super. 2014). Nevertheless, because the trial court addressed the claim, we will also.

- 14 -

In the case at bar, this Court properly granted the Commonwealth's request for a consciousness of guilt/flight instruction because there was sufficient evidence showing [Appellant] knew he was wanted for a crime and fled or concealed himself as a result. At trial, Sergeant Davis testified that he knew [Appellant] from around the neighborhood and knew a few of his usual hangouts. After learning that an arrest warrant had been issued for [Appellant], Sergeant Davis asked around and discovered that [Appellant] was staying at someone's house in the neighborhood. He and two fellow officers, in full uniform, went to that house at 5 a.m. and knocked at the front door, while two more officers went around to secure the rear of the property. Sergeant Davis testified that after he knocked at the door, [Appellant], fully clothed, looked out the window and saw him. Sergeant Davis shined his flashlight in [Appellant's] face, identified himself, and told [Appellant] to open the door. [Appellant] then stepped back from the window and Sergeant Davis could see him fleeing to the second floor of the property. The police officers continued to bang loudly on the front door and then opened the living room window and yelled, "Police! Come on down! After approximately 5 minutes, [Appellant] returned downstairs and opened the door. [Appellant's] knowledge that he was wanted by police could be inferred from the fact that [Appellant] was not at his own home yet still seemed aware that the police were there to arrest him and not another occupant, as demonstrated by the fact that he ran upstairs and concealed himself for several minutes before deciding to surrender. Therefore, this Court properly determined that the Commonwealth presented sufficient evidence to warrant a consciousness of guilt/flight charge to the jury.

Trial Court Opinion, 6/26/18, at 17-18.

Our review of the record supports the trial court's conclusion. In addition, we note that, when giving the consciousness of guilt/flight instruction, the trial court specifically informed the jury of the limited use of this evidence:

There was evidence, including the testimony of Sergeant Davis, that tended to show that Defendant Kamara hid from the police -- hid or fled from the police. ***The credibility, weight, and effect of this evidence is for you to decide.***

Generally speaking, when a crime is being committed and a person thinks he is or may be accused of committing it and he flees or conceals himself, such flight or concealment is a circumstance tending to prove the person is consciousness of guilt. ***Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flea or hide for some other motive and may do so even though innocent.***

Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt, depends upon the facts and circumstances of this case and, especially, upon the motives that may have prompted the flight or concealment.

***You may not find Defendant Kamara guilty solely based on the basis of flight or concealment.***

N.T., 3/28/17, 39-40 (emphasis added).

This instruction makes clear that the jury was free to reject any conclusion that Appellant fled the police or that he exhibited consciousness of guilt if he did. Accordingly, we discern no abuse of discretion on the part of the trial court in giving the above instruction. Appellant's third issue therefore fails.

In his last issue, Appellant argues that the trial court improperly concluded that the jury found him guilty of conspiracy to commit aggravated assault instead of conspiracy to commit murder, and sentenced him for that conviction. We agree the trial court erred in this conclusion.

The jury convicted Appellant of criminal conspiracy but failed to indicate on the verdict sheet whether the object of the conspiracy was aggravated assault or murder. At sentencing, in support of the conclusion that the jury found Appellant guilty of conspiracy to commit aggravated assault, the trial court stated:

> In our case the jury found the co-defendant guilty of aggravated assault. So the conspiracy in this case goes to the aggravated assault. Because the conspiracy in this case goes to the aggravated assault it does not merge and it's not required to merge with attempted murder. That's what the case law says.
>
> So I find the jury's decision on the conspiracy relates to aggravated assault as the other co-defendant was found guilty of that. So the conspiracy in this case goes to the aggravated assault. Therefore, [Appellant] can be sentenced separately on all the counts.

N.T., 6/9/17, 66-67.

The trial court further explained its rationale in its Rule 1925(a) opinion:

> In the case at bar, [Appellant] was convicted of, *inter alia*, attempted murder, aggravated assault, and conspiracy. His co-defendant Crenshaw was convicted of, *inter alia*, aggravated assault and conspiracy. The jury found Crenshaw not guilty of attempted murder. Thus, it is logical to conclude that the conspiracy was related to the aggravated assault, not the attempted murder, as conspiracy and aggravated assault are the crimes of which both defendants were found guilty. As attempted murder and conspiracy to commit aggravated assault do not merge, this Court properly sentenced [Appellant] to separate sentences on each count.
>
> [Appellant] argues that this was an "ambiguous verdict," because the jury "rendered a general verdict on the charge of conspiracy" and that [Appellant] must therefore receive the benefit of an ambiguous verdict and the charges should

merge for purposes of sentencing. This claim is without merit. All of the facts indicate that the conspiracy was attached to the aggravated assault charge as the jury found **both** defendants guilty of this crime. Only [Appellant] was found guilty of attempted murder. It would make no sense for the jury to find that Crenshaw conspired with [Appellant] to commit murder but then find Crenshaw not guilty of attempted murder but guilty of aggravated assault. The jury's verdict was not ambiguous and [Appellant] is not entitled to any benefit therefrom.

Trial Court Opinion, 8/26/18, at 19 (emphasis in original).

Although the trial court's logic is sound, its conclusion is not supported by Pennsylvania case law. This Court has held that "it is impossible to draw specific conclusions from a general verdict: When a general verdict is rendered, knowledge of the basis of the decision rests only with the jury itself. Therefore, it is impossible, not to mention improper, to draw specific conclusions from a general verdict. *Commonwealth v. Riley*, 811 A.2d 610, 619 (Pa. Super. 2002).

In *Commonwealth v. Kelly*, 78 A.3d 1136 (Pa. Super. 203), a panel of this Court reviewed an issue analogous to the one at bar. In *Kelly*, a jury convicted Kelly *in absentia* of attempted murder, aggravated assault, and firearm violations. The jury also found him guilty of a general charge of criminal conspiracy. *Kelly*, 78 A.3d at 1138. In addition to an aggregate 18-37-year sentence for the former convictions, the trial court imposed a concurrent 10-20-year sentence for conspiracy. As in this case, the jury did not identify which crime—attempted murder or aggravated assault—was found to be the object of the conspiracy.

Citing **Riley**, **supra**, this Court stated that Kelly "must be given the benefit of the jury's ambiguous verdict." **Kelly**, 78 A.3d at 1146. We then explained:

> Instantly, the benefit [to Kelly] would derive from concluding that the conspiracy verdict was for conspiracy to commit murder and not conspiracy to commit aggravated assault, since the former charge would automatically merge with attempted murder. Phrased differently, construing the verdict as conspiracy to commit aggravated assault could have allowed the court to sentence [Kelly] consecutively for that crime and attempted murder[.]

**Kelly**, 78 A.3d at 1146.

Here, the general conspiracy verdict rendered by the jury entitled Appellant to the same benefit as found in **Kelly**. Appellant, however, did not receive it. Rather, despite the jury's ambiguous general conspiracy verdict, the trial court imposed a consecutive sentence for conspiracy as predicted by **Kelly**. Thus, in accordance with **Riley** and **Kelly**, we agree with Appellant that the trial court erred in attempting to interpret the jury's verdict based on his co-defendant's acquittal of attempted murder.[7] Because the jury's verdict is ambiguous, Appellant is entitled to the benefit of such ambiguity. Accordingly, we vacate Appellant's judgment of sentence for his conspiracy conviction.

---

[7] Although **Kelly** did not involve a co-defendant, the trial court cites no case law that permits it to rectify the ambiguity in Appellant's conspiracy verdict by references to the charges for which the co-defendant was convicted.

In sum, we find that the trial court did not abuse its discretion in issuing exclusion orders during Pritchette's and Bivens' testimony because the Commonwealth presented sufficient evidence of witness intimidation and the trial court took measures to limit the infringement on the right to a public trial in both scope and duration.   We also find that the court did not err or abuse its discretion in permitting Sergeant Davis' testimony pertaining to Appellant's accent.   Additionally, the trial court committed no error in issuing a flight instruction to the jury.  We therefore affirm Appellant's convictions.

However, the trial court erred in concluding that Appellant was guilty of conspiracy to commit aggravated assault when the jury issued a general verdict.   We therefore vacate Appellant's judgment of sentence for his conspiracy conviction.   Because this result may disturb the trial court's sentencing scheme, we vacate Appellant's entire judgment of sentence and remand for resentencing.   ***See Commonwealth v. Goldhammer***, 517 A.2d 1280, 1283 (stating generally if appellate court upsets sentencing scheme, then a remand for resentencing is warranted).

Convictions affirmed.  Judgment of sentence vacated.  Case remanded for resentencing.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/19