**[J-69-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 3 EAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court entered on September 7, |
| | : | 2018 at No. 2883 EDA 2016, |
| v. | : | reversing and affirming the |
| | : | Judgment of Sentence entered on |
| | : | August 31, 2016 in the Court of |
| JIMEL KING, | : | Common Pleas, Philadelphia |
| | : | County, Criminal Division at No. CP- |
| Appellant | : | 51-CR-0007769-2015 |
| | : | |
| | : | ARGUED: September 11, 2019 |


**OPINION**


**JUSTICE DONOHUE** **DECIDED: July 21, 2020**

We granted allowance of appeal in this matter to consider the legality of Jimel

King's enhanced sentence for attempted murder resulting in serious bodily injury under

18 Pa.C.S. § 1102(c) when the Commonwealth failed to provide formal notice of its intent

to seek the enhancement in the charging documents. We also consider whether King's

consecutive sentences for the two inchoate crimes of attempted murder and conspiracy,

which arose out of the same incident, were precluded by 18 Pa.C.S. §§ 903(c) and 906.[1]

---

[1] Section 903(c) provides that "[i]f a person conspires to commit a number of crimes, he is only guilty of one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S. § 903(c). Section 906 provides that "[a] person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to

For the reasons that follow, we affirm the judgment of sentence as to the enhanced murder sentence, but we vacate the judgment of sentence at the conspiracy count. As our disposition disrupts the sentencing scheme, we vacate the judgment of sentence and remand to the Superior Court with instructions to remand for resentencing.

I.     **Factual and Procedural History**[2]

On June 17, 2015, Jimel King jumped out of a vehicle driven by Ramir Porter and fired at least nine bullets towards Arielle Banks, with one striking her ankle and another her lower back. Banks survived, but her hip and ankle were shattered. She provided information to the police that linked King and Porter to the crime.

On August 14, 2015, the Commonwealth filed a criminal information charging King with attempted murder, aggravated assault, conspiracy, carrying a firearm without a license, possession of a firearm by a person prohibited, and possessing an instrument of crime. The attempted murder charge alleged that King "[i]ntentionally and with malice attempted to cause the death of another human being[.]" Information, 8/14/15, at 1. The Commonwealth provided notice of its intent to seek a mandatory minimum of at least five years of incarceration pursuant to 42 Pa.C.S. § 9712 based on King's possession of a firearm while committing a crime of violence. *Id.* The information made no reference to 18 Pa.C.S. § 1102(c) (providing that maximum sentence for attempted murder is forty years where serious bodily injury occurs, and twenty years otherwise).

---

commit or culminate in the commission of the same crime." 18 Pa.C.S. § 906. Both statutes are discussed more fully infra.

[2] The Commonwealth filed a motion to correct an omission in the record, notifying us that three transcripts were omitted from the certified record. We agree with the Commonwealth that these transcripts are essential to a complete review of the issues before us, and thus grant the motion. *See* Pa.R.A.P. 1926.

King rejected a plea offer of eight to twenty years of incarceration in exchange for a plea of guilty to attempted murder, conspiracy, and possession of a firearm by a person prohibited. The Commonwealth informed King that based on the sentencing guidelines, the recommended minimum sentence for attempted murder was seventeen and one-half years of incarceration, and stated that the maximum possible sentence on all charges was eighty-seven years of incarceration.[3] King's Brief at 6. King rejected the offer and proceeded to trial on May 24, 2016.[4] King stipulated that Banks suffered a shattered hipbone and anklebone, requiring multiple surgeries and high intensity inpatient occupational and physical therapy. *See* N.T., 5/25/16, at 171-72. His defense was that another (unknown) individual shot Banks.

Before the jury retired to deliberate, the parties reviewed and agreed to the content and form of the verdict sheet which, in addition to listing all of the charges, contained the following interrogatory: "Answer only [i]f you find [King] guilty of Attempted Murder. Do you find beyond a reasonable doubt that the victim suffered serious bodily injury? YES or NO[.]" *Id.* at 200; Verdict Sheet, 5/26/16, at 1. The jury found King guilty of all charges.[5]

---

[3] The offense gravity score for attempted murder with serious bodily injury is fourteen. *See* 204 Pa.Code § 303.15. When paired with King's prior record score of five, the deadly weapon enhancement/used matrix called for a recommended minimum of 210 months, or seventeen and one-half years.

[4] King proceeded to a jury trial on all charges, except possession of a firearm by a person prohibited. Before trial, the court granted the Commonwealth's motion to sever this charge. *See* N.T., 5/23/16, at 50.

[5] *See* 18 Pa.C.S. §§ 901, 2702(a)(1), 903, 6103(a)(1), 6108, 6105(a)(1), and 907(b), respectively. King proceeded to a bench trial on the remaining firearm charge and was found guilty. *See* N.T., 5/27/16, at 14-18.

The jury also concluded that Banks suffered serious bodily injury as a result of King's attempted murder. *See* Verdict Sheet at 1.

King was originally sentenced to consecutive terms of imprisonment of twenty to forty years for attempted murder, ten to twenty years for conspiracy to commit murder, and five to ten years for possession of a firearm by a person prohibited. N.T., 8/31/16, at 31-32. King also received concurrent terms of five years of probation for carrying a firearm without a license and carrying a firearm on public streets in Philadelphia. *Id.* The court merged aggravated assault with attempted murder and imposed no further penalty on the remaining convictions. *Id.* The trial court issued a written sentencing order later that day, correcting King's sentence of ten to twenty years of incarceration for conspiracy to commit murder to no further penalty, instead imposing that same term for conspiracy to commit aggravated assault. Corrected Sentencing Order, 8/31/2016, at 1. King filed a post-sentence motion raising several claims not pertinent to the instant appeal, which was denied.

King appealed to the Superior Court, arguing that his sentence for attempted murder was illegal because the Commonwealth never charged "attempted murder causing serious bodily injury" or provided formal notice that it intended to seek the enhanced sentence under Section 1102(c). *See* Pa.R.A.P. 1925(b) Statement, 4/13/17, at 2-3. As previously noted, the maximum sentence for attempted murder where the victim did not suffer serious bodily injury[6] is twenty years. Hence, according to King, the failure to properly charge attempted murder resulted in an illegal sentence.

---

[6] "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment

The trial court recognized that the charging documents failed to specifically allege attempted murder causing serious bodily injury or reference Section 1102(c), but nonetheless rejected King's claim. Trial Court Opinion, 5/15/17, at 15. In reaching this conclusion, the trial court relied primarily on *Commonwealth v. Johnson*, 910 A.2d 60 (Pa. Super. 2006). *Id.* Johnson was convicted of attempted murder generally and received a sentence of seventeen and one-half to forty years of incarceration under Section 1102(c). *Johnson*, 910 A.2d at 63. The Superior Court vacated Johnson's sentence based on the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (holding "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt"). *Id.* at 67-68. The panel based its decision on three findings. First, the Commonwealth did not charge Johnson with attempted murder causing serious bodily injury. *Id.* at 67. Second, the Commonwealth did not provide notice that it intended to prove serious bodily injury at trial or seek an enhanced penalty. *Id.* Finally, the jury never found serious bodily injury in the context of attempted murder, although it did find serious bodily injury with respect to aggravated assault. *Id.* Accordingly, Johnson's maximum permissible sentence was twenty years because the jury's verdict was "limited to a finding of guilt on the crime of attempted murder generally[.]" *Id.* at 68.

The trial court distinguished *Johnson* from the instant case, reasoning that the dispositive fact in *Johnson* was the failure to present the question of serious bodily injury to the jury, resulting in an *Apprendi* violation. Trial Court Opinion, 5/15/17, at 15. The

---

of the function of any bodily member or organ." 18 Pa.C.S. § 2301. There is no dispute that the stipulated injuries met this definition.

trial court then concluded that the other two factors highlighted in *Johnson* were dicta. *Id.* The trial court ultimately concluded that King's sentence was proper in light of the special interrogatory, the description of the incident in the indictment, and testimony presented at the grand jury hearing. *Id.* The trial court also noted that the Commonwealth's opening statement discussed serious bodily injury, albeit in the context of aggravated assault. *Id.* Accordingly, the trial court found King's sentence for attempted murder causing serious bodily injury permissible in this case. *Id.* at 16.

In an unpublished memorandum decision the Superior Court reversed King's conviction for carrying a firearm on public streets in Philadelphia, but otherwise affirmed the judgment of sentence.[7] *Commonwealth v. King*, 2883 EDA 2016, 2018 WL 4271212 (Pa. Super. Sept. 7, 2018). In addition to his *Apprendi* claim, King argued for the first time on appeal that the trial court illegally imposed consecutive sentences for attempted murder and conspiracy to commit murder in violation of Sections 903 and 906. According to King, his convictions for conspiracy to commit murder, conspiracy to commit aggravated assault, and attempted murder were all the result of conduct designed to commit or culminate in the commission of the same offense, specifically murder.

Before addressing King's claims, the panel explained that legality of sentencing claims involve questions of law for which the standard of review is de novo and the scope of review is plenary. *See King*, 2883 EDA 2016 at 3 (citing *Commonwealth v. Barnes*,

---

[7] The Superior Court reversed King's conviction for carrying a firearm on public streets in Philadelphia because "neither the indictment nor the [ ] information indicated that the shooting had taken place on public streets in Philadelphia, and while the Commonwealth requested that [King] be arraigned on [this] charge, the court did not so arraign him." *King*, 2883 EDA 2016 at 7. Because King's sentence for this offense was concurrent to a lawfully imposed sentence of the same length, however, the panel did not remand for resentencing. *Id.*

167 A.3d 110, 116 (Pa. Super. 2017) (en banc)). The panel also recognized that challenges implicating the legality of sentencing are not subject to waiver and may be raised for the first time on appeal. *Id.* (citing *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005)).

In addressing the *Apprendi* claim, the panel first noted that serious bodily injury resulting from attempted murder is a fact that must be proven prior to imposing the enhanced sentence. *Id.* (citing *Commonwealth v. Johnson*, 910 A.2d 60, 66-67 (Pa. Super. 2006)). The panel also explained that the Commonwealth must place an offender on notice where it intends to seek the forty-year maximum sentence under Section 1102(c). *Id.* The court examined *Commonwealth v. Reid*, 867 A.2d 1280, 1281 (Pa. Super. 2005), wherein Reid pleaded *nolo contendere* to attempted murder for stabbing the victim eleven times before slashing the victim's throat. *Id.* at 1280-81. The criminal information "did not explicitly state that the victim suffered 'serious bodily injury' using those precise words[.]" *Id.* at 1281. The court conducted a colloquy and imposed a sentence of eighteen to forty years of incarceration for attempted murder. *Id.* at 1281. On appeal, Reid argued that the failure to provide notice of intent to seek the enhanced sentence violated *Apprendi. Id.* The *Reid* Court disagreed, explaining that Reid "agreed to the Commonwealth's recitation of the facts underlying the charge of [attempted murder], including the fact that the victim was stabbed eleven times and her throat was slashed." *Id.* at 1285. Additionally, Reid was charged with attempted murder as a felony of the first degree and explicitly acknowledged during the colloquy that he could face a maximum sentence of forty years of incarceration, available only where the Commonwealth seeks an enhanced sentence. *Id.* The court therefore rejected any

assertion "that [Reid] was surprised at sentencing or that the trial court imposed a sentence in violation of *Apprendi*[.]" Accordingly, the court affirmed Reid's judgment of sentence. *Id.*

The panel also discussed *Barnes*. Barnes was convicted of attempted murder and sentenced to twenty to forty years of incarceration pursuant to Section 1102(c). 167 A.3d at 115. On appeal, Barnes challenged that sentence based on the failure to present the question of serious bodily injury to the jury. *Id.* at 116. The Superior Court vacated Barnes' sentence, noting that Barnes had not been charged with attempted murder resulting in serious bodily injury; that serious bodily injury was not alleged in either the complaint or the information; that the jury was not instructed to find serious bodily injury with respect to attempted murder; and that the verdict sheet did not reference serious bodily injury related to the attempted murder charge. *Id.* at 117-18. Similar to the circumstances in *Johnson*, the court concluded that the jury's finding of serious bodily injury with respect to aggravated assault "could not be used to infer that the jury found serious bodily injury for the attempted murder charge." *Id.* at 119 (citing *Johnson*, 910 A.2d at 68 n.10) (additional citations omitted)).

In light of these decisions, the panel concluded that King received sufficient notice of the Commonwealth's intent to seek the enhanced sentence for attempted murder resulting in serious bodily injury under Section 1102(c). *King*, 2883 EDA 2016, at 6. The court explained that the indictment averred King had shot Banks multiple times and the information charged King with attempted murder as a felony of the first degree. *Id.* at 4-5. The Commonwealth also informed King prior to trial that the low end of the sentencing guidelines for attempted murder was seventeen and one-half years, indicating that it

would seek the maximum sentence of forty years. *Id.* at 5. The court also noted that, despite not being instructed on serious bodily injury in the context of attempted murder, the jury was instructed on serious bodily injury with respect to aggravated assault. *Id.* Lastly, the verdict slip specifically asked the jury to determine whether King caused serious bodily injury in connection with attempted murder, which it answered affirmatively. *Id.* The court thus concluded that King's sentence was permissible. *Id.* at 6.[8]

The court next rejected King's claim that the corrected sentence, imposing ten to twenty years of incarceration for conspiracy to commit aggravated assault, was illegal. King asserted that Sections 906 and 903(c), when read together, prohibit findings of guilt for multiple conspiracies where the crimes were the object of the same conspiratorial agreement and designed to culminate in the commission of the same crime. *Id.* The court disagreed, noting that King was properly sentenced for conspiracy to commit aggravated assault and attempted murder because each crime requires an additional element that the other does not. *Id.* (citing *Commonwealth v. Kelly*, 78 A.3d 1136, 1144-1145 (Pa. Super. 2013)). Attempted murder requires the specific intent to kill, whereas conspiracy to commit aggravated assault requires an agreement. *Id.* Accordingly, the court concluded that these offenses are not designed to culminate in the commission of the same crime of murder. *Id.*

---

[8] In a footnote, the Superior Court rejected King's contention that his sentence for attempted murder was improper in light of *United States v. Alleyne*, 133 S. Ct. 2151 (2013), and *Commonwealth v. Hopkins*, 117 A.3d 247, 258-262 (Pa. 2015), because the Commonwealth failed to provide formal notice of a "new aggravated offense." The court reasoned that both *Alleyne* and *Hopkins* were inapposite because, unlike the statutes in those cases, Section 1102(c) is not a mandatory minimum sentence. *King*, 2883 EDA 2016, at 13 n.3.

King filed a petition for allowance of appeal and we granted review of the following questions:

> a. Did not the Superior Court err and deny [King] due process and Sixth Amendment rights in holding that the Commonwealth need not provide formal notice to a defendant when seeking to prosecute him for an aggravated offense, specifically the 40-year maximum sentence authorized under 18 Pa.C.S.A. §1102(c)?
>
> b. Did not the Superior Court err and conflate 18 Pa.C.S.[] §§ 906 and 903(c) in holding that conspiracy to commit murder and conspiracy to commit aggravated assault are separate conspiracies, where [King's] actions were the object of one conspiratorial agreement and relationship, pursuant to § 903(c), and where [King] was, therefore, subject to an illegal sentence contrary to the prohibition under § 906 against multiple convictions for more than one inchoate offense?

*Commonwealth v. King*, 203 A.3d 973 (Pa. 2019).

## II.     Enhanced Sentence for Attempted Murder

### A.  The Arguments of the Parties

King first asserts that the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, as well as the notice and jury requirements of the Sixth Amendment, require the Commonwealth to provide formal notice, in either the indictment or information, when it intends to seek the enhanced maximum sentence of forty years of imprisonment for attempted murder causing serious bodily injury under Section 1102(c).  King's Brief at 15-16 (citing *Apprendi,* 530 U.S. at 490).  He claims that the Commonwealth's failure to provide such notice in this case resulted in an illegal sentence.  *Id.*  King further maintains that the notice requirement was not remedied by the inclusion of a special interrogatory on the verdict sheet.  *Id.* at 17-18 (citing *Hopkins,* 117 A.3d at 260).  Moreover, the trial court's failure to instruct the jury on

serious bodily injury in the context of attempted murder was not cured by its instruction on serious bodily injury with regard to aggravated assault. *Id.* at 18.

King relies on *Barnes* to argue there are three conditions that must be met before an enhanced sentence under Section 1102(c) may be imposed. *Id.* at 19 (citing *Barnes*, 167 A.3d at 117). The defendant must be charged with attempted murder causing serious bodily injury, placed on notice that the Commonwealth intends to prove serious bodily injury or seek the enhanced sentence, and the jury must find serious bodily injury with respect to the charge of attempted murder. *Id.* at 19-20 (citing *Barnes*, 167 A.3d at 117 (citation omitted)). King maintains that absent formal notice, an offender would be left to deduce the Commonwealth's intent to seek an enhanced sentence from the attendant circumstances. *Id.* at 21. King also cites this Court's decisions in *Commonwealth v. Hopkins*, 117 A.3d 247 (Pa. 2015) and *Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016), to argue that facts increasing the statutory maximum for an offense must be clearly stated in the charging documents as an element of the offense, thereby enabling the defendant to predict the corresponding penalty. King's Brief at 17, 21.

King maintains that the Superior Court recently "reaffirmed" the notice requirement with regard to Section 1102(c) in *Commonwealth v. Bickerstaff*, 204 A.3d 988 (Pa. Super. 2019). King's Brief at 21-22. In *Bickerstaff*, the Superior Court found counsel ineffective for failing to "protect [Bickerstaff] from the sentence enhancement for attempted murder[ ] [causing] serious bodily injury." *Bickerstaff*, 204 A.3d at 997-98. Bickerstaff received no notice that the Commonwealth intended to seek an enhanced sentence for attempted murder pursuant to Section 1102(c), but was rather "ambushed" with a special interrogatory regarding serious bodily injury with respect to attempted murder on the

verdict sheet. *Id.* at 997. The court concluded that "[a]bsent more, this surprise interrogatory was not enough to put [Bickerstaff] on notice to defend against attempted murder[ ] [causing] serious bodily injury." *Id.*[9]

[9] King raises an additional argument claiming that the failure to provide formal notice with respect to attempted murder resulting in serious bodily injury resulted in the trial court lacking subject matter jurisdiction to adjudicate the case. King's Brief at 23 (citing *Commonwealth v. Little*, 314 A.2d 270, 273 (Pa. 1974) ("The right to formal notice of charges . . . is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to the jurisdiction of the court.")).

In *Little*, a coroner acted as a magistrate and held a preliminary hearing on murder charges. Little was then indicted by a grand jury and he entered a general guilty plea. In collateral proceedings the trial court sua sponte declared that discharge was required because, inter alia, "the absence of a criminal complaint from the record voided all subsequent proceedings[.]" *Id.* at 272. We stated that the court's competence to try the case was beyond question. "But to invoke this jurisdiction, something more is required; it is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged." *Id.* at 272–73. Formal notice, we said, "is so basic to the fairness of subsequent proceedings that it cannot be waived even if the defendant voluntarily submits to the jurisdiction of the court." *Id.* at 273 (citing *Albrecht v. United States*, 273 U.S. 1 (1927) and *Commonwealth ex rel. Fagan v. Francies*, 53 Pa.Super. 278, 1913 WL 4670 (Pa. Super. 1913)). We ultimately held that formal notice was met by the grand jury's indictment.

*Little* offers no relief as the *Apprendi* violation herein would, at most, deprive the court of the ability to sentence King to an enhanced sentence. It would not divest the trial court of the jurisdiction to sentence King for the unenhanced attempted murder charge of which he plainly had formal notice. That King requests a remand for resentencing and not discharge establishes that there is no subject matter jurisdiction issue.

Moreover, the continuing validity of *Little*'s statement that formal notice is a component of subject matter jurisdiction is suspect. We note that the United States Supreme Court later expressly disavowed that same view as a matter of federal law. *United States v. Cotton*, 535 U.S. 625, 631 (2002) ("Insofar as it held that a defective indictment deprives a court of jurisdiction, [*Ex Parte*] *Bain*[, 121 U.S. 1 (1887)] is overruled."). *Bain*, in turn, was cited in *Albrecht* while the *Commonwealth ex rel. Fagan* case cited *Bain*. The *Little* Court found that formal notice was a component of subject matter jurisdiction under both the United States and Pennsylvania constitutions, but as noted *Cotton* disavowed the notion as a matter of federal law.

The Commonwealth argues that King received sufficient notice of its intent to seek the sentencing enhancement for attempted murder resulting in serious bodily injury pursuant to Section 1102(c). Commonwealth's Brief at 12. The Commonwealth explains that indictments must be read in a "common-sense" rather than an "overly technical" manner. *Id.* (citing *Commonwealth v. Jones*, 912 A.2d 268, 289 (Pa. 2006)). The Commonwealth further provides that an indictment or information will be "sufficient if it sets forth the elements of the offense with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events." *Id.* at 12-13 (quoting *Commonwealth v. Alston*, 651 A.2d 1092, 1095 (Pa. 1992)).

The Commonwealth asserts that the charging documents were sufficient under that asserted standard and provided sufficient notice. *Id.* at 13. The indictment accused King of attempted murder by "shooting at [Banks] with a loaded firearm, striking her multiple times about the body" and specifically alleged serious bodily injury with respect to aggravated assault based on the same acts. *Id.* at 13 (quoting Indictment at 1, 3). The information, viewed against the backdrop of the indictment, was likewise sufficient. *Id.* Although the attempted murder charge did not allege serious bodily injury, the subsequent charge averred that King had participated in a conspiracy with the objectives of assault and murder, furthered by the overt act of "[shooting] another multiple times with a firearm[.]" *Id.* at 13-14 (quoting Information at 1). The Commonwealth also notes that Pennsylvania Rule of Criminal Procedure 560(c) provides that the omission of or error within a statute citation "shall not affect the validity or sufficiency of the indictment." *Id.* at 15 (quoting Pa.R.Crim.P. 560(c)).

The Commonwealth further asserts that King was not unfairly surprised in a manner that would offend due process. *Id.* at 15. To the contrary, King was informed of the maximum possible penalty for all offenses charged before trial and made a knowing decision to reject the Commonwealth's plea offer. *Id.* The Commonwealth relayed to King that the recommended minimum guideline sentence for attempted murder was more than seventeen years, implying that it intended to seek the serious bodily injury enhancement. *Id.* The Commonwealth underscores the fact that King's attorney understood the ranges of penalties available. *Id.* at 16. Moreover, the Commonwealth asserts that the defense's strategy was not impaired by lack of formal notice because King stipulated to Banks' injuries at trial and attempted to demonstrate that another perpetrator committed the crime. *Id.* The Commonwealth asserts that the instant case is analogous to *Reid*. *Id.* at 17. Specifically, rather than pleading *nolo contendere* after hearing a description of the victim's injuries as in *Reid*, King stipulated to Banks' injuries prior to trial. *Id.* (citing *Reid*, 867 A.2d at 1284-85). He was therefore on notice that Banks suffered serious bodily injury. *Id.*

The Commonwealth further argues that King's conviction comports with *Apprendi*. *Id.* at 17. The Commonwealth disagrees with King's assertion that *Apprendi* requires any fact, other than a prior conviction, that increases the maximum penalty for a crime be charged in the indictment. *Id.* at 18. The Commonwealth explains that the *Apprendi* Court did not address the indictment issue because Apprendi did not directly challenge the indictment. *Id.* The Commonwealth maintains that *Apprendi* requires fair notice, which occurred in this case. *Id.* *Apprendi* also requires that any fact, other than a prior conviction, be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 18-19.

This condition was also met because the instant jury found serious bodily injury in connection with attempted murder beyond a reasonable doubt. *Id.* In any event, the Commonwealth argues that *Apprendi* does not apply to facts admitted by a defendant, and in this case King stipulated to the cause and extent of Banks' injuries. *Id.*

The Commonwealth further asserts that *Johnson*, *Barnes*, and *Bickerstaff* are all inapposite. *Id.* at 20. The juries in *Johnson* and *Barnes* never determined whether the defendants' attempted murder offenses resulted in serious bodily injury. *Id.* Additionally, unlike the circumstances in *Bickerstaff*, King was not ambushed by the verdict sheet including an interrogatory regarding serious bodily injury associated with attempted murder. *Id.* at 20-21. Alternatively, the Commonwealth asks this Court to reject the holding in *Bickerstaff* to the extent it imposes a *per se* rule requiring reversal based on the failure to cite Section 1102(c) in the information. *Id.*

Lastly, the Commonwealth maintains that any *Apprendi* error in this case was harmless. *Id.* at 22 (citing *United States v. Cotton*, 535 U.S. 1781 (2002)). The Commonwealth focuses on the fact that the evidence of serious bodily injury was "overwhelming and uncontested," given both parties stipulated to the severity of Banks' injuries. *Id.* The Commonwealth asserts that King's defense was not impaired by lack of formal notice because his defense strategy was that another unknown individual shot Banks. *Id.*

## B. Analysis

King does not allege that the enhanced sentence under Section 1102(c) is facially unconstitutional, but rather that its application in this case resulted in an illegal sentence. We have held that claims alleging a violation of the *Apprendi* line of cases implicate

legality of sentencing and are not subject to the traditional doctrine of waiver. *Wolfe*, 140 A.3d 651 at 660 (citations omitted). As it poses a question of law, the standard of review is de novo and the scope of review is plenary. *Commonwealth v. Martinez,* 147 A.3d 517, 529 (Pa. 2016) (citing *Commonwealth v. Crawley*, 924 A.2d 612, 614 (Pa. 2007)).

"[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*, 530 U.S. at 476 (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999)). *Jones* is a federal case involving a federal prosecution and rests on the Grand Jury Clause of the Fifth Amendment to the United States Constitution as summarized by the United States Court of Appeals for the Sixth Circuit:

> *Apprendi* did *not* hold that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi,* 530 U.S. at 476, 120 S.Ct. 2348. Rather, this is the holding of *Jones,* a case involving a *federal* prosecution, to which the Fifth Amendment Grand Jury Clause clearly applies. *See United States v. Cotton,* 535 U.S. 625, 627, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). *Apprendi* relied on *Jones* to hold that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." 530 U.S. at 490, 120 S.Ct. 2348. The *Apprendi* holding does not mention any requirements related to the indictment.

*Williams v. Haviland*, 467 F.3d 527, 532 (6th Cir. 2006). *See also Cotton*, 535 U.S. at 627 ("In federal prosecutions, such facts must also be charged in the indictment.") (citation omitted).

*Apprendi* thus implicates two related areas of law: notice as required by due process and the right to a jury trial. The grand jury indictment notice component sets the stage for what the government intends to prove to the jury. "The grand and petit juries thus form a 'strong and two-fold barrier . . . between the liberties of the people and the prerogative of the [government].'" *Harris v. United States*, 536 U.S. 545, 564 (2002) (quoting *Duncan v. Louisiana,* 391 U.S. 145, 151 (1968)), *overruled by Alleyne.* However, the *Apprendi* Court declined to address whether the charging document itself needs to include the relevant additional facts.

> **Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment**. He relies entirely on the fact that the "due process of law" that the Fourteenth Amendment requires the States to provide to persons accused of crime encompasses the right to a trial by jury, *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and the right to have every element of the offense proved beyond a reasonable doubt, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). That Amendment has not, however, been construed to include the Fifth Amendment right to "presentment or indictment of a Grand Jury" that was implicated in our recent decision in *Almendarez-Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). We thus do not address the indictment question separately today.

*Apprendi*, 530 U.S. at 477 n.3 (emphasis added). The Commonwealth relies in part on this aspect of *Apprendi* to establish that the criminal information was sufficient under Rule of Criminal Procedure 560(c). Commonwealth's Brief at 18 (noting that the Fifth Amendment grand jury indictment requirement has not been incorporated against the States).

We agree with King that the indictment and criminal information were facially inadequate because neither document alerted King to the Commonwealth's intention to

prove serious bodily injury with respect to the attempted murder count. While *Apprendi* declined to address a constitutional claim regarding what the charging document must say, we have interpreted the due process notice aspect of the charging document to involve both Rule 560 and the Pennsylvania Constitution. In *Commonwealth v. Sims*, 919 A.2d 931 (Pa. 2007), we stated:

> Just as it requires a criminal statute to give fair warning of the conduct proscribed, *see, e.g., Commonwealth v. Magliocco,* 584 Pa. 244, 883 A.2d 479, 487 (2005), due process requires that the criminal information provide fair notice of every crime of which a criminal defendant is accused, *see Commonwealth v. Khorey,* 555 A.2d 100, 108 (Pa. 1989); Pa.R.Crim.P. 560(C) (providing that "[t]he information shall contain the ... citation of the statute ... or other provision of law that the defendant is alleged therein to have violated").

*Id.* at 939.

The *Khorey* Court, in turn, observed that "One purpose of an indictment or an information is to satisfy the requirements of the Sixth Amendment to the United States Constitution and of Article I, Section 9 of the Pennsylvania Constitution, which enunciate the right to formal notice of charges." 555 A.2d at 108. Whatever the source of the notice guarantee, the salient point is that the United States Supreme Court's holding in *Apprendi* establishes that a fact increasing the statutory maximum, i.e. serious bodily injury in this case, must be treated as an element. *Apprendi*, 530 U.S. at 490. Later, in *Alleyne*, the Court held that the rationale in *Apprendi* applied equally "to facts increasing the mandatory minimum." *Alleyne*, 570 U.S. at 111-12. In reaching this conclusion, the Court explained:

> It is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime. Indeed, criminal statutes have long specified both the floor and ceiling of sentence ranges, which is evidence that both define the legally

prescribed penalty. This historical practice allowed those who violated the law to know, ex ante, the contours of the penalty that the legislature affixed to the crime – and comports with the obvious truth that the floor of a mandatory range is as relevant to wrongdoers as the ceiling. A fact that increases a sentencing floor, thus, forms an essential ingredient of the offense.

*Alleyne*, 570 U.S. at 112-13. Thus, under the Sixth Amendment, "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id.* at 113. Importantly, in terms of notice, the Court stated that "[d]efining facts that increase a mandatory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment[,]" and "preserves the historic role of the jury as an intermediary between the [s]tate and criminal defendants." *Id.* at 113-14.

Applying these principles, the Commonwealth in effect prosecuted King for the aggravated crime of attempted murder causing serious bodily injury despite charging him with the crime of attempted murder. The statutory definition of attempted murder does not require proof of serious bodily injury. *See* 18 Pa.C.S. § 901, 2502.[10] Section 1102(c) provides that a person convicted of attempted murder that does not result in serious bodily injury may be sentenced to a maximum term of twenty years of imprisonment, whereas a person convicted of attempted murder that results in serious bodily injury faces a maximum term of forty years of imprisonment. 18 Pa.C.S. § 1102(c). Serious bodily

---

[10] Section 901 provides, in relevant part, as follows: "A person commits an attempt where, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(1). Section 2502 provides, in relevant part, that "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a).

injury caused by the attempted murder is undoubtedly an essential element of the offense that must be included in the charging documents.

It therefore follows that the charging instrument must include those elements to put the defendant on notice of the crime. This Court in *Commonwealth v. Alston*, 651 A.2d 1092 (Pa. 1994), explained:

> The purpose of an Information or an Indictment is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act. An Indictment or an Information is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events. This may be accomplished through use of the words of the statute itself as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.

*Alston,* 651 A.2d at 1095-96 (internal citations omitted).

Here, the criminal information plainly put King on notice of the crime of attempted murder. But for purposes of *Apprendi*, King was convicted of the aggravated crime of attempted murder causing serious bodily injury. Nothing in the indictment or criminal information itself alerted King to the Commonwealth's intention to prosecute him of that crime. We therefore hold that when the Commonwealth intends to seek an enhanced sentence for attempted murder resulting in serious bodily injury under Section 1102(c), the Commonwealth must include a citation to the statutory provision as well as its language in the charging documents. While the information arguably gave some notice of the Commonwealth's intent to seek the sentencing enhancement based on the facts alleged in the charging documents and the Commonwealth's mention of the sentencing

guidelines prior to trial, this degree of notice was insufficient. Because we decide this matter on due process notice grounds, we need not address in detail the Superior Court's decisions in *Barnes*, *Johnson*, *Reid*, and *Bickerstaff*.

## C. Remedy

Having found that the criminal information failed to adequately apprise King of the Commonwealth's intention, we turn to the question of remedy. As acknowledged by both parties, the element of serious bodily injury in connection with attempted murder was indeed submitted to the jury and found beyond a reasonable doubt as indicated on the jury's verdict sheet. The question becomes whether the absence of that fact from the indictment or information requires a finding that the resulting sentence for the aggravated crime was illegal.

We hold that it does not. That the Commonwealth's information was insufficient as a matter of due process notice does not resolve whether the conviction at trial was illegally secured. As previously noted, the indictment sets the stage for trial and what the Commonwealth intends to prove. For the following reasons, we conclude that King was adequately apprised through other means of the Commonwealth's intentions and that the charging error was harmless beyond a reasonable doubt.

The United States Supreme Court held in *Cotton* that *Apprendi* violations based on the failure to include the relevant facts in a federal indictment do not serve to invalidate the conviction and may be subject to plain error analysis. Therefore, *Cotton* precludes the notion that a defective criminal information automatically warrants relief. We note that our appellate courts do not apply plain error. *See Commonwealth v. Hays*, 218 A.3d 1260, 1267 (Pa. 2019) (Saylor, C.J., concurring) ("the Court has abrogated the plain error

doctrine in Pennsylvania") (citing *Commonwealth v. Clair*, 326 A.2d 272, 274 (Pa. 1974)). The harmless error standard invoked by the Commonwealth is generally applied with respect to preserved errors. *See United States v. Olano*, 507 U.S. 725, 734 (1993) ("When the defendant has made a timely objection to an error . . . a court of appeals normally engages in a specific analysis of the district court record—a so-called "harmless error" inquiry—to determine whether the error was prejudicial."). The legality of sentencing inquiry, in contrast, is conducted notwithstanding the waiver caused by a failure to object.[11] We agree that the notice error herein may be reviewed under the harmless error framework despite the lack of objection.[12]

---

[11] At least one federal case after *Cotton* applied, in a consolidated appeal, the *Cotton* plain error standard to unpreserved errors and the harmless error standard to preserved errors:

> For the appellants who did not object at trial, *Cotton* requires us to apply plain-error analysis and, more specifically, to assess the evidence of drug quantity to determine whether the sentencing error seriously affects the integrity, fairness, or public reputation of the judicial proceedings. If the evidence supporting the omitted fact is "overwhelming" and "essentially uncontroverted," then the error cannot be said to seriously affect the integrity of the proceedings. *Cotton,* 122 S.Ct. at 1786.

> For the appellants who objected at sentencing, we apply harmless error analysis.

*United States v. Baptiste,* 309 F.3d 274, 277 (5th Cir. 2002). "Harmless error, however, is a rule of constitutional law, whereas plain error is a rule of appellate procedure." *United States v. Phipps,* 319 F.3d 177, 189 (5th Cir. 2003).

[12] We granted review in *Commonwealth v. Hamlett*, 202 A.3d 45, 46 (Pa. 2019), to address the Superior Court's invocation of harmless error sua sponte. We note that here the Commonwealth invoked harmless error in its appellee's brief and furthermore King had the opportunity to respond to the argument in his reply brief and did so. *See* King's Reply Brief at 9-11.

In *Commonwealth v. Story*, 383 A.2d 155 (Pa. 1978), this Court adopted a harmless error standard equally applicable to errors involving state law as those involving federal constitutional error. *Id.* at 162. This standard provides that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Id.* We also found that the burden of establishing harmlessness beyond a reasonable doubt is borne by the Commonwealth. *Id.* at 162 n.11. While cases involving harmless error typically involve the prejudicial impact of evidence erroneously admitted at trial, the doctrine is also implicated with other types of error. *Id.* at 164 n.16 (citing cases).[13] Furthermore, we have stated that the harmless error standard applies in the related context of variances between the criminal information and the proof presented at trial. *See In re R.M.*, 790 A.2d 300, 306 (Pa. 2002) ("Although we hold that a constitutional violation occurred, we note that, notwithstanding defective notice even in the criminal context, a variance may be deemed harmless where a defendant is fully apprised of the charges against him and able to anticipate and respond to the prosecution's proof."). Indeed, many courts have found that *Apprendi* errors may be harmless if the evidence is overwhelming and uncontroverted. *See e.g., Washington v. Recuenoco*, 548 U.S. 212, 218-22 (2006) (finding failure to submit sentencing factor to the jury, like the failure to submit an element to the jury, is not structural error, and is thus subject to harmless error analysis); *Cotton*, 535 U.S. at 632-34 (holding *Apprendi* error harmless where evidence

---

[13] With regard to improperly admitted evidence, the *Story* Court explained that our courts employ three approaches to assess harmlessness. The first focuses on the prejudicial impact of erroneously admitted evidence. The second assesses whether the erroneously admitted evidence was nonetheless cumulative of other properly admitted evidence. The third concerns whether the overall untainted evidence of guilt was so overwhelming that the prejudicial impact of the erroneously admitted evidence could not have contributed to the verdict. *Id.* at 164-65.

overwhelming and uncontroverted)*; Wolfe*, 140 A.3d at 662 (acknowledging other courts have deemed *Apprendi*-based errors harmless, but declining to engage in harmless error analysis where "statute was itself found to be invalid and non-severable").

We find *Cotton* particularly instructive. In *Cotton*, several defendants were federally indicted for conspiracy to distribute and possession with intent to distribute a specified amount of cocaine or cocaine base. *Id.* at 627. The indictment originally specified the amount of drugs involved was five or more kilograms of cocaine and fifty grams or more of cocaine base. *Id.* A superseding indictment that expanded the time frame of the conspiracy and the number of participants specified only a "detectable amount" of cocaine and cocaine base. *Id.* at 628. The indictment thus failed to allege the quantities of drugs that triggered enhanced penalties under the relevant statute. *Id.* The jury found the defendants guilty but did not make a finding as to the quantity of drugs. *Id.* Instead, the district court made factual findings regarding the quantities of drugs, which increased the defendants' statutory maximums from twenty years to no more than life. *Id.* The defendants did not challenge their sentences on the basis that the drug quantity was not listed in the indictment. *Id.*

While the defendants' appeals were pending before the court of appeals, the Court decided *Apprendi*, which led the defendants to challenge the fact that the quantity of drugs was neither alleged in the indictment nor found by the jury. *Id.* at 628-29. The Court of Appeals noted that the defendants failed to raise this argument before the district court and assessed the claim for plain error. *Id.* It then vacated the sentences, ultimately concluding that "because an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional" the court was "without jurisdiction to impose

a sentence for an offense not charged in the indictment." *Id.* The court reasoned that such an error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* The Supreme Court reversed, finding no plain error because the omission of the amount of drugs in the indictment "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings[,]" considering "[t]he evidence that the conspiracy involved at least [fifty] grams of cocaine base was 'overwhelming' and 'essentially uncontroverted.'" *Id.* at 632-633. "Surely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base." *Id.* at 633. The Court further noted the real danger to the fairness, integrity, and public reputation of judicial proceedings would be if the defendants "despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." *Id.* at 634.

In lieu of addressing whether the error is subject to any type of harmlessness, King instead relies on the notion that *Hopkins* and other cases from this Court striking down mandatory minimum statutes in the wake of *Alleyne* equally apply to Section 1102(c). This argument fails to account for the fact that *Hopkins* held that the relevant statute was facially unconstitutional and not capable of severance. Therefore, the Commonwealth could not seek a mandatory minimum sentence under that statute unless and until the General Assembly enacted a constitutional statute. King does not claim that a properly-drafted criminal information notice would not permit application of the enhanced sentence.

This is in contrast to *Hopkins*, which rejected the use of a special interrogatory because that procedure would not cure the host of other issues involved.

> The Commonwealth asserts the employment of special verdicts—or, as expressed at oral argument, the finding of a general verdict with special interrogatories addressing proximity and age—as a way to cure the constitutional deficiencies in the statute. We disagree. First, nothing in Section 6317 suggests the legislature contemplated such an approach. Second, special verdicts would not cure the notice and appeal provisions of Section 6317 noted above. Specifically, as, under *Alleyne,* the factual determinations of proximity and age pursuant to Section 6317 would be elements of a new aggravated offense, the complaint and information/indictment would have to set forth related allegations. *See, e.g.,* Pa.R.Crim.P. 504, 560. This notice requirement could not be remedied by the use of special verdicts.

*Hopkins*, 117 A.3d at 260.

Accepting King's argument that his case involves an application of *Hopkins* would suggest that the statute is simply unconstitutional. In other words, even if the Commonwealth explicitly cited Section 1102(c) in the information, issued a formal notice of intent to seek the sentencing enhancement, and submitted the issue to the jury as a special interrogatory, the resulting sentence of twenty to forty years would still be unconstitutional.

Since a proper notice would permit the sentence, we agree that the instant error is amenable to harmless error review. We further find that the Commonwealth has met its burden of establishing that the error was harmless beyond a reasonable doubt. Similar to *Cotton*, the evidence of serious bodily injury in this case was overwhelming and uncontroverted. Moreover, this is not a case where the judge made the requisite finding, as in *Cotton*, but rather it was stipulated to and found by the jury beyond a reasonable doubt. King never contested the severity of Banks' injuries, but rather stipulated that, as

a result of two gunshot wounds, Banks suffered a shattered hipbone and anklebone, requiring multiple surgeries and high intensity inpatient occupational and physical therapy. *See* N.T., 5/25/16, at 171-72. While King did not receive formal notice of the Commonwealth's intent to seek the enhancement, King received *de facto* notice, at various points before trial, that the Commonwealth was seeking the enhancement. For example, the factual summaries in the charging documents made clear that Banks suffered serious bodily injury. Moreover, the Commonwealth advised King that the minimum penalty for attempted murder if convicted was seventeen and one-half years, signaling that the Commonwealth intended to seek the enhancement.[14] Finally, the Commonwealth and King's attorney reviewed and agreed to the content and form of the verdict sheet prior to jury deliberations, which included a special interrogatory regarding whether Banks suffered serious bodily injury as a result of the attempted murder.

We also find persuasive the Commonwealth's point that its failure to provide formal notice of its intent to seek the enhanced sentence did not affect King's choice of defense or execution of that defense, considering King stipulated to Banks' injuries and instead sought to demonstrate that another unknown individual committed the crime. *See Commonwealth v. Holcombe*, 498 A.2d 833, 848-49 (finding harmless error where trial court's jury charge improperly expanding on the information did not substantially prejudice the defendant by making his prior defense strategy inapplicable to the charge faced under

---

[14] Because the minimum sentence of confinement "shall not exceed one-half of the maximum sentence imposed," 42 Pa.C.S. § 9756(b)(1), the Commonwealth's referencing a minimum of seventeen and one-half years would require a corresponding maximum of at least thirty-five years.

the additional erroneous instruction). Therefore, the harmless nature of the error precludes a finding that the sentence was illegally imposed.

### III. Consecutive Sentences for Inchoate Crimes

### A. The Arguments of the Parties

King challenges the imposition of consecutive sentences for the inchoate crimes of attempted murder and conspiracy. He argues that despite being charged and convicted of both conspiracy to commit murder and conspiracy to commit aggravated assault, there was only one conspiracy under Section 903(c), as both crimes were "the object of the same agreement or continuous conspiratorial agreement." King's Brief at 27 (quoting 18 Pa.C.S. § 903(c)). Accordingly, he argues the Superior Court erred in "finding there were two separate conspiracies where there was only one agreement." *Id.* at 28. King maintains that the Superior Court incorrectly relied on *Kelly* for the proposition that an offender may be sentenced on both attempted murder and conspiracy to commit aggravated assault because the two offenses are not necessarily designed to culminate in the commission of the same crime. *Id.* King argues that this rationale "confuses § 906, which is concerned with the underlying crimes, with § 903(c), which is concerned with the number of separate agreements." *Id.*

With respect to the number of agreements in this matter, King explains that according to *Braverman v. United States*, 317 U.S. 49, 53 (1942), a single conspiratorial agreement "cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." King's Brief at 28. He maintains that the issue of whether single or multiple conspiracies exist depends on application of the following test:

The number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and the degree to which interdependence is needed for the overall operation to succeed.

*Id.* at 29 (quoting *Commonwealth v. Andrews*, 768 A.2d 309, 316 (Pa. 2001)). King asserts that analyzing these factors makes clear there was only one agreement in this case, i.e., to murder Banks, and thus only one conspiracy. King's Brief at 30. In other words, there was no separate agreement to injure Banks, plus a separate agreement to kill her.

Building upon this rationale, King maintains that his single conspiracy conviction must "merge" with attempted murder for sentencing purposes under Section 906 because the instant conduct was "designed to commit or culminate in the commission of the same crime." *Id.* (quoting 18 Pa.C.S. § 906). In support of this conclusion, King distinguishes the instant case from both *Commonwealth v. Graves*, 508 A.2d 1198, 1198 (Pa. 1986) (per curiam) (holding that conspiracy to assault multiple police officers and solicitation to murder one police officer did not merge under Section 906 because both offenses were directed at a different end), and *Commonwealth v. Jacobs*, 39 A.3d 977, 987 (Pa. 2012) (plurality) (holding attempted escape and conspiracy to commit escape did not merge under Section 906 because both offenses were not designed to culminate in the same crime). *Id.* at 31-32. Unlike *Graves* and *Jacobs*, Kings argues the instant offenses were both designed to culminate in Banks' murder. *Id.* at 32. Finally, King urges application of the rule of lenity to the extent that Section 906 is viewed as ambiguous. *Id.* at 33.

The Commonwealth responds that King's consecutive sentences for attempted murder and conspiracy to commit aggravated assault were not subject to "merger" under

Section 906 because they were not designed to culminate in the same crime. Commonwealth's Brief at 23. In reaching this conclusion, the Commonwealth relies on *Kelly*. *Id.* at 23-24 (citing *Kelly*, 78 A.3d at 1144-45). Kelly was convicted of attempted murder, aggravated assault, and conspiracy generally and sentenced separately for attempted murder and conspiracy to commit aggravated assault. *Id.* The trial court vacated Kelly's sentence for conspiracy and the Superior Court affirmed, explaining that because the jury found Kelly guilty of conspiracy generally, rather than conspiracy to commit attempted murder or conspiracy to commit aggravated assault, it was unclear whether the offense should merge with attempted murder for purposes of Section 906. *Id.* The Commonwealth explains that this case is "like *Kelly*, but with one crucial distinction." *Id.* at 25. Instead of returning a general conspiracy verdict, the instant jury returned guilty verdicts for both conspiracy to commit murder and aggravated assault, the latter of which does not merge with attempted murder under Section 906. *Id.* The Commonwealth similarly rejects King's contention that his sentence runs afoul of Section 903(c). The Commonwealth focuses on the fact that although King was convicted of multiple conspiracies, the court only imposed judgment of sentence on one of those offenses. *Id.* at 26.[15]

---

[15] Within this claim, King also argues that the trial court's correction of its "original" oral sentence outside of his presence violated due process. King's Brief at 26-27. We decline to address this issue as King failed to raise it at any point prior to this appeal. Moreover, this issue is beyond the scope of the claims upon which this Court granted review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 1115(a)(3) ("Only those questions set forth in the petition [for allowance of appeal], or fairly comprised therein, will ordinarily be considered by the court in the event that an appeal is allowed."). In any event, our remand cures any error in that regard.

## B. Analysis

We find that King entered into one agreement with his co-conspirator to murder Banks and, because he failed in his attempt to do so, King could not be sentenced to serve separate terms for the inchoate crimes of conspiracy and attempt.

Preliminarily, we note that the Commonwealth and Superior Court both theorize that the consecutive sentences were legal at least in part because King was found guilty of conspiracy to commit murder as well as conspiracy to commit aggravated assault. The parties further frame this issue as one of merger. These characterizations are flawed under these circumstances for two reasons.

First, the jury did not find King guilty of both conspiracy to commit homicide and conspiracy to commit aggravated assault. A review of the verdict sheet returned by the jury lists seven charges: attempted murder, conspiracy to commit murder, conspiracy to commit aggravated assault, aggravated assault, firearms not to be carried without a license, carrying a firearm on public streets in Philadelphia, and possession of an instrument of crime. The verdict sheet lists a corresponding charge number for each crime. Next to both conspiracy to commit murder and conspiracy to commit aggravated assault is the designation "#2." This is consistent with the criminal information, which charged six total counts with only one count of conspiracy. Within the language for conspiracy, the Commonwealth listed: "Criminal objective: assault, murder." Thus, in reality the Commonwealth presented the jury with two separate theories of conspiracy, presumably as a fallback in case the jury found the lack of specific intent to kill. The Commonwealth indicated the case would be submitted to the jury as a general conspiracy count, but King agreed with the judge's comment that there were two:

> [COMMONWEALTH]: Then conspiracy on here it just is general. We –
>
> THE COURT: It should say conspiracy to commit attempted murder and conspiracy to commit aggravated assault.
>
> [KING]: Conspiracy to commit murder because you can't have two offenses. And conspiracy to commit aggravated assault.

N.T. 5/25/16, at 175. While any problem with the verdict sheet was agreed to by King, we find that the plenary scope of review permits consideration of what crimes King was actually convicted of for purposes of our legality of sentence review.[16]

Second, even if we accept that the jury returned a verdict of conspiracy to commit aggravated assault as existing apart from the conspiracy to commit murder, Section 906 would still preclude multiple sentences under its plain language. We agree with King that there was only one conspiracy in this case: an agreement to kill Banks. Where, as here, the words of the statute are clear and free from ambiguity, the plain language of the

---

[16] Justice Mundy asserts that the verdict sheet establishes that King was in fact convicted of two counts of conspiracy, freeing the trial court to impose sentence on the "separate" conspiracy to commit aggravated assault. See Dissenting Op. at 2 (Mundy, J.). The Dissent does not address the fact that the criminal information alleged within the sole count of conspiracy that King sought to "assault, murder." Because any conspiracy to kill necessarily subsumes an intent to commit serious bodily injury, we disagree with the position that two separate conspiracies can emerge from the one charged conspiracy count.

Indeed, our analysis on this point is consistent with our disposition of King's first claim, holding that King was on fair notice of the Commonwealth's intent to proceed on the enhanced sentence of attempted serious bodily injury. Likewise, the criminal information informed King only that the Commonwealth sought to prove one conspiracy. On its terms, the information alleged that the objective of the conspiracy was to kill, with the conspiracy to commit assault a lesser-included offense that was available to the jury if it found the lack of a specific intent to kill. *Cf. Commonwealth v. Kelly*, 78 A.3d 1136, 1146 (Pa. Super. 2013) ("In *Commonwealth v. Riley,* 811 A.2d 610 (Pa.Super.2002), this Court held that where the jury renders a general verdict and there is an absence of clear evidence of the jury's intent, a defendant can only be sentenced for conspiracy to commit the less serious underlying offense.").

statute must not be disregarded. 1 Pa.C.S. § 1921(b). The plain language of Section 906 provides that a defendant may not be convicted of more than one inchoate crime (attempt, solicitation and conspiracy) "for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S. § 906. In the present case, both of the inchoate crimes at issue were clearly intended to "culminate," i.e., result in, the commission of the same crime – the murder of Banks. With Porter driving the car, King fired multiple shots at Banks, hitting her twice. The jury found King guilty of attempted murder, which of necessity involved a finding of the specific intent to kill Banks.

The Commonwealth's legal argument assumes that there existed a separate conspiracy to commit aggravated assault that was not subsumed within the conspiracy to kill. But a person cannot conspire to kill a targeted individual and not concurrently conspire to commit aggravated assault against the same individual. This Court has held that "[t]he act necessary to establish the offense of attempted murder – a substantial step towards an intentional killing – includes, indeed, coincides with, the same act which was necessary to establish the offense of aggravated assault, namely, the infliction of serious bodily injury." *Commonwealth v. Anderson*, 650 A.2d 20, 24 (Pa. 1994). As such, the single object of both the attempt and conspiracy convictions was Banks' murder, and thus, pursuant to Section 906, King could be convicted (i.e., sentenced[17]) for only one of these inchoate crimes. In fact, the Commonwealth's own sentencing memorandum agreed that any conspiracy to commit aggravated assault was subsumed within the conspiracy to kill.

---

[17] This Court has clarified that the term "convicted" in Section 906 refers to the entry of a judgment of sentence, not a finding of guilt by the jury. *Commonwealth v. Jacobs*, 39 A.3d 977, 983 (Pa. 2012) (OAJC). "As this question relates to the legality of sentence, it presents a question of law." *Id.* at 982.

The memorandum stated: "Conspiracy to Commit Aggravated Assault – merges with Conspiracy to Commit Murder[.]" Memorandum, 8/17/16, at unnumbered 2. The Commonwealth asked for King to be sentenced at Conspiracy to Commit Murder. *Id.* at unnumbered 3.

Rather than follow the unambiguous statutory language of Section 906, the Commonwealth asks this Court to follow the Superior Court's approach by applying merger principles to the crimes of attempted murder and conspiracy to commit aggravated assault. The panel below relied on *Kelly*, wherein the Superior Court suggested that Section 906 incorporates aspects of the merger statute, 42 Pa.C.S. § 9765 ("No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.").

Kelly was convicted and sentenced concurrently for, *inter alia*, attempted murder and conspiracy to commit aggravated assault arising from a shooting incident involving one victim. *Kelly*, 78 A.3d at 1145. The majority reasoned that the offenses of attempted murder and conspiracy to commit aggravated assault are not designed to culminate in the commission of the same crime, specifically, murder. *Id.* at 1145. The majority further noted that these offenses would not merge under traditional merger principles, as each offense includes an additional element absent from the other. *Id.* "Further, attempted murder and conspiracy to commit aggravated assault both include additional separate elements and therefore do not merge." *Id.* (citing *Commonwealth v. Anderson,* 650 A.2d 20, 24 (Pa. 1994)).

*Anderson* is a case applying the "same elements" test. *See Commonwealth. v. Jones,* 912 A.2d 815, 818–19 (Pa. 2006) (OAJC) (noting that this Court in *Anderson* adopted the *Blockburger v. United States,* 284 U.S. 299, 304 (1932), test for statutory merger, i.e. "whether each provision requires proof of a fact which the other does not"). The *Kelly* Court therefore apparently understood the Section 906 analysis to include a determination of whether the underlying offenses for the two inchoate crimes are, in fact, the same crime; i.e., had the same elements.

We disapprove of the Superior Court's injection of *Blockburger* merger principles in resolving a Section 906 claim. That statute does not provide that the crimes underlying the inchoate offenses must themselves be the same crime, but rather that the underlying crimes involved "conduct designed to commit or to **culminate** in the commission of the same crime." 18 Pa.C.S. § 906 (emphasis added).[18] We have noted that "the *Blockburger* test applies only in the multiple punishment context as a rule of statutory construction, to be utilized only when the legislature has not indicated whether punishment for separate offenses is cumulative." *Commonwealth v. Baldwin*, 985 A.2d

---

[18] Under the Commonwealth's merger analysis, Section 906 would seemingly never apply, even as to convictions for attempted murder and conspiracy to attempt murder. Each of the three inchoate crimes of conspiracy, attempt, and solicitation have elements not shared by the other. *See e.g. Robinson v. United States*, 608 A.2d 115, 116 (D.C. 1992) (holding that the crime of attempt requires an overt act that would have resulted in the commission of the crime, whereas conspiracy requires an agreement and a "far less exacting" preparatory act, and therefore the crimes contain different elements and do not merge under *Blockburger*).

Similarly, Justice Mundy's conclusion that the crimes of attempted murder and conspiracy to commit aggravated assault are "not necessarily designed to culminate in the commission of the same crime in the narrowest sense, as the object crime of murder requires the specific intent to kill, while aggravated assault merely requires the intent to cause serious bodily," Dissenting Op. at 3 (Mundy, J.), is simply an alternative way of saying that the inchoate crimes at issue here do not merge under *Blockburger*.

830, 836 (Pa. 2009). By enacting Section 906, the General Assembly has plainly indicated that cumulative punishment for inchoate crimes is specifically prohibited, regardless of whether those crimes would otherwise merge, where the inchoate crimes involve "conduct designed to commit or to culminate in the commission of the same crime." Thus, in the absence of Section 906, King could unquestionably receive consecutive sentences for the crimes at issue here.

As we determine that the *Blockburger* merger test is not the appropriate test, we now address two cases from this Court applying Section 906, *Commonwealth v. Jacobs*, 39 A.3d 977 (Pa. 2012) (OAJC), and *Commonwealth v. Graves*, 508 A.2d 1198 (Pa. 1986) (per curiam). *Jacobs*, cited by the Commonwealth, involved an apparent attempted escape by Jacobs and a fellow prisoner, Frank Seretich, from a county jail. Seretich tried to scale the building with a 225-foot makeshift rope but lost his grip and fell to his death. Some evidence suggested that Jacobs helped Seretich construct the rope and intended to use the same rope after Seretich. Jacobs was charged with, and separately sentenced for, attempted escape and conspiracy to commit escape. The lead opinion in *Jacobs* determined that "the record clearly establishes that each inchoate crime had a separate criminal purpose: the attempt was to culminate in Appellant's escape, and the conspiracy was to culminate in either Seretich's or both of their escapes." *Jacobs*, 39 A.3d at 986. *Jacobs* involved a circumstance in which the precise nature of the conspiracy could not be determined, as the two actors could have agreed only that Seretich would escape or, conversely, that both would escape. In the present case, by contrast, the Commonwealth does not contest that the agreement between King and Porter had a single conspiratorial objective – to murder Banks.

This Court in *Graves*, cited by King, addressed a circumstance in which the defendant was convicted and sentenced for criminal conspiracy and criminal solicitation for his part in an incident in which he conspired with fellow gang members to assault three police officers and also individually solicited a gang member to murder one of the police officers. Consecutive sentences were imposed for the inchoate conspiracy and solicitation crimes. This Court approved of the two sentences, holding that "the record demonstrates that each [crime] was directed at a different purpose." *Id.* at 1198. The conspiracy was "for the purpose of furthering an **assault** with several co-defendants on three police officers," while the solicitation "had as its object the **death** of one of the officers." *Id.* (emphases added). As such, the intended culmination of the two inchoate offenses was not the same crime, but rather two different crimes (assault and murder). We agree that *Graves* supports King's position as there were two distinct objectives in *Graves*. Furthermore, those objectives were different with respect to individual victims, further establishing the presence of multiple and distinct crimes for purposes of Section 906.[19] While these opinions use the word "merger," in context, that is a shorthand

---

[19] The presence of an additional victim is significant. By way of comparison, every robbery necessarily subsumes a theft. According to the Commonwealth's argument, a defendant who conspired with another to commit a robbery against one victim could be sentenced separately if the Commonwealth happened to charge (1) attempted robbery and (2) conspiracy to commit theft, but could **not** be sentenced separately if the Commonwealth charged (1) attempted robbery and (2) conspiracy to commit robbery. Where the actors intend to rob multiple victims, Section 906 would not prohibit multiple sentences. But where there is only one victim, multiple sentences are not permitted for inchoate crimes subsumed within the ultimate objective of the conspiracy.

Under the factual circumstances presented in this case, the notion that there was an independent aggravated assault separable from the attempted murder is a pure fiction. In fact, as previously stated, the Commonwealth's sentencing memorandum agreed that there was no separate aggravated assault, as it listed all of the charges and stated: "Conspiracy to Commit Aggravated Assault - merges with Conspiracy to Commit Murder."

reference to why consecutive sentences were not permitted and not an invocation of *Blockburger*.

In sum, the traditional merger test has no application here because the Section 9765 merger statute would never apply to the inchoate crimes of conspiracy and criminal attempt. The plain language of the specific statute governing this scenario precludes multiple sentences because there is no possibility that the conspiracy to commit aggravated assault existed independently of any conspiracy to kill, nor does the Commonwealth allege any kind of temporal separation or other circumstances to suggest that two conspiratorial agreements could have existed.

By enacting Section 906, the General Assembly declared that where a defendant tries to achieve a result – in this case, murder – but fails to do so, he may only be punished once in the absence of distinct criminal objectives.[20] We thus find that King is entitled to relief. As this disrupts the overall sentencing scheme, we vacate judgment of sentence and remand to the Superior Court with further directions to remand to the trial court for resentencing.

Justices Baer, Todd and Wecht join the opinion.

Chief Justice Saylor files a concurring and dissenting opinion.

---

This represents a concession of the obvious: King and Porter necessarily conspired to commit an aggravated assault against Banks when they conspired to kill her. *Cf. Commonwealth v. Anderson*, 650 A.2d 20, 24 (Pa. 1994). Accordingly, the inchoate crimes constituted "conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S. § 906.

[20] Nor is it unsurprising that the General Assembly chooses to punish more harshly those who succeed than those who attempt but fail. *Compare* 18 Pa.C.S. § 1102(c) (setting maximum sentence for attempted murder at forty years of incarceration where victim suffers serious bodily injury occurred and twenty years otherwise), *with* 18 Pa.C.S. § 1102(a) (mandatory sentence of life without parole where victim dies).

Justice Mundy files a concurring and dissenting opinion in which Justice Dougherty joins.